18   601
24   601
18   601
37   287

THE STATE, EX REL. THE ATTORNEY GENERAL, V. THE COUNTY COMMISSIONERS OF DOUGLAS COUNTY.

1. **Constitutional Law**: TAXES FOR INSANE. The provisions of chapter forty of the Compiled Statutes of 1885, requiring the several counties in the state to pay the expense of the support and maintenance of insane persons having a legal settlement in the counties from which they are sent, are not in violation of the constitution, but are valid and binding upon the counties to which they apply.

2. **Insane**: LIABILITY OF COUNTY. A county is not chargeable with the support and maintenance of insane persons sent to the hospital therefrom, unless the legal settlement is found to be in such county.

3. ——: TAX FOR SUPPORT. The levy of a tax, under the pro-

visions of section 47 of chapter 40 of the Compiled Statutes of 1885, for the support of the insane having a legal settlement in such county, is a county tax, to be levied by the proper county officers; and if levied upon all the taxable property of the county alike, is not void for want of uniformity.

ORIGINAL application for mandamus to compel the board of county commissioners of Douglas county to allow the amount claimed to be due the state for the care and protection given to insane patients from that county. It was submitted to the court on the following agreed statement of facts:

" In this case it is stipulated and agreed by the relator and respondent, acting through their respective attorneys, Wm. Leese, attorney general, for the state, and J. C. Cowin for the respondents; that it is true as matters of fact:

\*    \*    \*    \*    \*    \*    \*    \*    \*

" *Second.* There is no record or other evidence showing that the board of trustees of the insane hospital at any time fixed the sum to be paid per week for the board and care of patients. When the asylum burned down all records were destroyed, but the sum of $4.00 per week was charged and demanded by the hospital up to February 29th, 1880. On that day the board of public lands and buildings adopted the following resolution:

" *Resolved,* That the secretary be and is hereby instructed to notify the auditor and superintendent for the hospital for insane that the board of public lands and buildings has reduced the price of board of patients at the hospital for insane to $3.00 per week, to take effect December 1st, 1879.

" A certified copy was served upon the superintendent and thereafter $3.00 a week was charged, to take effect December 1st, 1879.

" There was no other action taken by the board of pub-

lic lands and buildings with respect to fixing the sum to be paid per week, and $3.00 per week is charged and demanded by the hospital in accordance with said resolution for all patients in the hospital.

" *Third.* From the year 1873 to the year 1885, inclusive, the state board of equalization and the state officers. in that behalf provided, in deciding upon and fixing the rate of the general state tax (based upon the appropriation made each year by the legislature, which included all expenses of insane, including board and care of patients) to be levied for each current year, included in the rate for general state tax each current year, a sufficient amount to meet all expenses and expenditures of whatever nature connected with the maintenance of the insane hospital, and including the cost of board and care of patients, as fixed and demanded according to the facts agreed in the foregoing statement No. 2, and such sum was levied for that purpose as a part of the general state taxes each year, and was collected and appropriated and used for defraying said expenses, including the board and care of all patients, and there is no deficiency in that regard. The respondent Douglas county paid said-general state tax, which included said expenses.

" *Fourth.* In addition to the foregoing levy, the state auditor each year notified the county clerk of respondent county of the amount charged against the county according to the second paragraph of this statement of facts, and demanded that such amount be added to the general state tax, which already included such costs and expenses as stated in paragraph three hereof, and such amount was levied in Douglas county for 1873 to 1876, inclusive, as an insane hospital tax, and the amount paid by Douglas county under the last mentioned levy into the state treasury from November 30th, 1873, to the present time was. $4,227.75 and no more. And the amount certified by the superintendent to the auditor, and by the auditor to the

respondent from November 30th, 1873, until November 30th, 1876, was the amount of $7,035.33.

"*Fifth.* The rate of general state levy which included said insane hospital expenses was sufficient, exclusive of the tax and levy provided by section 47 of chapter 40 of the Compiled Statutes of Nebraska, to meet the appropriations made by the legislature for each year, which included all expenditures and expenses for the insane hospital, including the board and care of all patients.

"*Sixth.* It is further agreed that if the court shall finally determine that the county respondent is under obligations to levy a tax as provided by section 47, chapter 40, entitled 'Insane,' and shall further determine that the county respondent is entitled to be credited for the amount it has paid toward the support of the insane, by reason of the amount for the support of the insane being included in the general state tax according to paragraph three of this agreement and stipulation, and paid by the county and used in the support of the insane inmates in said hospital, then and in that case the case may be referred for the purpose of ascertaining the amount of such credit to which said county would be entitled."

*William Leese, Attorney General,* and *T. M. Marquett,* for the State.

The validity of the tax has been determined. *B. & M. R. R. v. Cass County,* 16 Neb., 137. *Same v. Saunders County,* Id., 125. The levy of the tax is directed by Laws 1885, Ch. 70. Neglect of county board for previous years no defense. *State v. Franklin County,* 35 Ohio State, 468. *State v. Harris,* 17 Id., 615. *People v. Supervisors,* 8 N. Y., 330. *Same v. Same,* 10 Wend., 366. The remedy is by mandamus. *Clark v. Buffalo County,* 6 Neb., 463. *Elmore v. Zeigler,* 52 Ala., 227. *State v. Wilson,* 17 Wis., 709.

*J. C. Cowin,* for respondents.

From the agreed statement of facts it will be seen that respondent is not resisting this writ to evade the payment of the expenses and costs of the board and care of the insane patients having legal settlement within its boundary, or any part of its just proportion of the expenses of the government. The state officers, thereunto authorized by law, themselves added to the general state tax all these expenses levied for these expenses, and the tax has been yearly collected by the county, paid into the state treasury, and used to defray such expenses. By this levy Douglas county has probably paid more than it would have paid under a levy made under section 47. So that Douglas county appears here to resist a new levy for a tax it has. once paid and discharged in full. The great civil war, which put our constitution to the severest test, never in its. most critical and trying period, when every means within. constitutional authority were resorted to for the purpose of raising a revenue to carry on a gigantic war, never even then, or any time, subjected the constitution and the people to the test of a measure so monstrous as to require a, tax to be twice paid, either by direction or indirection; and yet it is sought to be enforced in enlightened Nebraska, against citizens always willing to bear their just proportion of the burden of the government, and in a time of profound peace, and in the most summary proceeding. Such a proceeding is not taxation but confiscation. Excess of taxation is void. Cooley Cons. Lim., 644. *B. & M. v. York County,* 7 Neb., 487. *Hammett v. Philadelphia,* 65 Penn. State, 151. Referring to the constitution, Art. 5, § 19; Art. 9, §§ 1, 5, 6, 7, and Art. 3, § 19; Comp. Stat., chaps. 40, 83; Comp. Stat., Ch. 77, §§ 74, 75, 76, the respondents claim:

1. That the revenue provided for board and care of the insane is a " State Tax." Cooley Cons. Lim., 496. *Mur-*

*ray v. Lehman,* 61 Miss., 283.   *State v. Liedtke,* 9 Neb., 468.   *Dundy v. Richardson Co.,* 8 Neb., 508.

2.   As such it must be levied under Const., Art. 9, § 1. And see *Turner v. Althaus,* 6 Neb., 77.   *Clother v. Maher,* 15 Id., 6.   *Covell v. Young,* 11 Id., 511.   *Fletcher v. Oliver,* 25 Ark., 289.   *People v. McCreery,* 34 Cal., 432.

3.   It is incompetent for the legislature to authorize a local tax for a general state purpose.   Cooley Taxation, 104.   *Dorgan v. Boston,* 12 Allen, 223.   *Hammett v. Philadelphia,* 65 Penn. State, 146, 151.

4.   The tax is illegal, for it is not competent for the legislature to impose a *county tax* for *county purposes.*   *Cornell v. People,* 107 Ill., 372.   *Hasbrouck v. Milwaukee,* 13 Wis., 42.   *Pope v. Phifer,* 3 Heisk., 682.

5.   The tax is a violation of the 14th amendment to the constitution of the United States.   The revenue sought to be enforced taxes a part of the tax payers twice.   *Durkee v. Janesville,* 28 Wis.; 464.   This tax would make a *different rate* for the general fund tax in the different counties. Burroughs Taxation, Ch. 5.

*William Leese, Attorney General,* and *T. M. Marquett,* in reply.

The county is simply a political division of the state, organized as a part of the machinery of the state for the performance of functions of a public nature.   *Barton Co. v. Walser,* 47 Mo., 189.   *Laramie Co. v. Albany Co.,* 92 U. S., 307.   The state may require counties to take care of its insane, etc.   *Poor Commissioner v. Detroit,* 28 Mich., 234.   *City of Alton v. Madison Co.,* 21 Ill., 115.   The power to determine what shall be the taxing district for any particular burden is purely a legislative power, and not to be interfered with by the judiciary.   Cooley on Taxation, 110.   *People v. Supervisors,* 20 N. Y., 252. *People v. Lawrence,* 41 N. Y., 137.   *People v. Central R. R.,* 43 Cal., 398.

REESE, J.

The questions involved in this case are of great importance to the state and to the people of the several counties, as they involve, among others, the question of the *power* of the legislature to impose upon the people of the several counties the expense of the maintenance of insane persons at the state hospital, in addition to the general state tax levied for the purpose of maintaining this institution.

While we have carefully investigated all the questions presented, yet, for want of sufficient time at our disposal to discuss each one with that degree of care to which it seems to merit, we must be content with a very brief statement of our conclusions, without any elaboration.

From the agreed and stipulated facts it appears that the amount of tax levied by the state authorities has been sufficient to maintain the hospital, paying all the expense of board, etc., of all the patients, so that it has not been a matter of absolute necessity for its maintenance that any further burdens should be imposed upon counties having patients there under the provisions of section 47 of chapter 40 of the Compiled Statutes of 1885. It must be borne in mind that the question here is simply one of the *power* of the legislature to impose this tax. All suggestions as to its expediency must be banished from the case. The legislative department, being one of the co-ordinate branches of the government of the state, cannot be controlled by the courts so long as it acts within its jurisdiction and the limitations of the constitution. In fact, within those limits it is the supreme and controlling power of the state, and both the executive and judicial must yield a willing obedience to its mandates.

It is insisted that as a levy of tax has been regularly made for the maintenance of the hospital, it is not within the power of the legislature to again tax the people of the several counties for the maintenance of the insane sent to

it from such counties; that it is double taxation, and in effect a confiscation of the property of the citizen, and that all such taxation must necessarily be void. It must be conceded that if the tax is in excess of the power of the legislature it is void, and if it is a double tax for the same purpose it is in excess of the legislative power, and therefore void. While our judgment may not, and does not, approve the method adopted for the support of the hospital for the insane, and while it would seem that the burden is made unnecessarily heavy, yet, as we have suggested, the question of propriety is for the legislature.

By the statement of facts agreed upon, it appears that the taxes imposed by the state at large are, and have been, sufficient for the support and maintenance of the hospital, and that in addition thereto each county is required to impose a tax sufficient to pay the expense of its patients who are there confined.

It is clearly within the power of the legislature to provide for the maintenance of the insane by general taxation of the state, and to relieve the several counties from the burden, except as they bear their proportion with the other counties of the state; or to require each county to maintain its own insane in hospitals provided by them; or to pay the expense of the maintenance of their insane in a hospital provided by the state. In this each state has adopted the course which to its legislature has seemed most judicious. And we think it is clearly within the legislative power to provide by law and taxation, in the first instance, for the support of the insane by the state, and then require the counties, which otherwise would have to support the insane having a residence within their borders, to repay the state the amount thus expended. Any other view would leave the care of this, the most unfortunate class of our citizens, to the will and caprice of the county boards of the several counties in the state, which would result in anything but a harmonious system of caring for them. We

have carefully examined all the authorities cited by the respondent, and are unable to arrive at any other conclusion. This seems to be the policy of our state, and we think the right to adopt such a policy cannot be successfully questioned. The wrong, if any exists, seems to be an error of judgment in the amount of tax necessary to be levied by the state to insure the carrying out of the purpose of the law. This may be in part the result of oversight, or it may have become necessary by the failure of the several counties to collect and pay over the amounts required by the section (47) above referred to. Perhaps the latter. Again, there, are many patients whose residence cannot be ascertained, and for whom provision must be made. It would be clearly unjust to require the county in which the insane person is apprehended to pay the expense of his maintenance; this must be done, if at all, by state taxation. It is very properly provided by section 48, Id., that the estates and relatives of insane persons, when able to do so, shall reimburse the county for the money paid, thereby making the counties the losers only to the extent of money paid out for those who are unable to support themselves.

Other questions are presented by the very able brief of counsel for the respondent which require attention, and will be briefly noticed.

It is claimed that the tax required to be levied by section 47 is a state tax, and therefore the county has no authority to make the levy, and further, that such levy would be a violation of the fundamental requirement that taxation shall be uniform throughout the state. While it is true that the hospital for the insane is, as argued by the respondents, a state institution, yet, as we have seen, the maintenance of the insane is not necessarily a state burden, and therefore it is within the power of the legislature to require that the tax may be levied and collected by each county for the purpose of reimbursing the

state, and we think it is also within the power of the legislature to require the tax so levied to be placed with other taxes going to the state in order that it may be withdrawn from the control of the county officers, and set apart at the outset to the use for which it is levied. This being true, the requirement of uniformity is not violated, as the tax is uniform throughout the taxing district in which it is levied. This is all that is required.

Again, it is claimed that if the tax is a county tax, it is not competent for the legislature to make the levy, that such tax can only be imposed by county authority. This is true, but by an examination of the law it will appear that the tax is not levied by the state or its officers. The state auditor is required to notify the county clerk of each county the amount due from it to the state. The county is charged with the amount in gross. The proper estimates of the amount of tax necessary to pay the indebtedness are made by the county officers, and when the percentage of levy is ascertained by them, it is their duty to levy the tax and place it against the property in the county. The *tax* is not levied by the state but by the county, for the purpose of paying an indebtedness due the state and ascertained by its officers.

The suggestion that the imposition of the tax provided for in section 47 is in violation of the fourteenth amendment of the constitution of the United States has, we think, been sufficiently noticed by the foregoing. There are no unequal exactions or burdens imposed by the section.

It is urged that if the writ is allowed as prayed for in this case, and the other counties of this state are required to pay the amounts charged to them, it will enforce the payment of a large amount of money into the state treasury which is not necessary, and has, virtually, already been paid in the form of taxation under the general tax levy of the state, as many other counties, like the relator, have failed to levy the tax, or if levied and collected, to pay

the same to the state treasurer. This fact may account for the high rate of taxation made necessary for the support of the hospital for the insane. If the tax had been levied, and the money paid over by the county treasurers as required by law, it would have materially affected the levy by the state board of equalization, for we must presume they were governed by the actual necessities of the case, and by their official oaths. Section 75 of the revenue law (Chapter 77, Compiled Statutes of 1885) provides that the rate of general state tax shall be sufficient to realize the amount necessary to meet appropriations. It cannot be supposed that the state board of equalization will impose an unjust or oppressive tax, or that they would levy the full amount necessary to meet all the expenses of the state institutions. if a large amount of money was in the treasury to the credit of the funds from which the appropriations were made, but, in the language of the statute, "an amount necessary to meet the appropriations" would be the full measure of their duty. An unreasonable excess could and should be controlled by the courts. We fully agree with counsel that it is not in accordance with the spirit of the institutions of this country that large amounts of money should be wrung from the people by taxation and placed in the public treasuries, for such a condition is universally followed by extravagance in public expenditures. But this must, in the first instance at least, be left to the wisdom of the proper department of the government.

By the stipulation of facts it is shown that a number of patients are, and have been, in the hospital, the charges for whose keeping are made to Douglas county, while the records show that the legal settlements of such persons were not in the county named. By section 23 of the act under consideration it is made the duty of the commissioners of insanity of each county to ascertain the legal settlement of insane persons, and certify the same to the

superintendent of the hospital.   If it is not in the county,
the expense of his maintenance should not be charged to it.
It is also provided that if the legal settlement is in another
county in the state, the expense should be charged to such
county ; and by section 27, it is provided that if the insane
person has no legal settlement, or if the settlement cannot
be ascertained, the person shall be supported at the expense
of the state.   By this the county commissioners of insanity
are the judges of the place of legal settlement.   There is
no suggestion of want of good faith on their part, or a
failure to honestly decide the questions before them, yet
we find that these provisions of the law have been ignored,
and Douglas county is called upon to answer for the main-
tenance of persons for whose support they were, and are,
in no sense, legally bound.   Of this class we notice the
following :

Fred Larson, legal settlement, unknown...........$ 113 72

Immanuel Harrison, same as above................   37 15

Boraora Evans (or Homar), same as above........   601 68

Cristina Halquist, legal settlement, unknown..... 1564 10

Marietta Albra (or Aubray), legal settlement, un-
    known, and so stand in commission's warr't.. 1537 23

Patrick Bickman, legal settlement found by the
    commissioners of insanity to be in Chicago..   770 86

Amos B. Dunn, legal settlement found by com-
    missioners of insanity to be at Minneapolis,
    Minn............................ ...................   50 29

Amos Robinson, legal settlement, unknown, and
    so stated in warrant of admission ............   89 16

Cornelius Morse, legal settlement, unknown, and
    so stated in warrant of admission ............   68 58

N. S. Minor, legal  settlement,  Erie county,
    Penn., and so stated in warrant of admission   188 10

John Johnson, agreed to be erroneous..............   22 29

John Bunse, legal settlement, Germany, and so
    found by the commissioners of insanity.....   14 15

Making a total of..............................$5057 31

State v. Douglas County.

Which is sought to be imposed upon Douglas county by the management of the hospital, without any authority of law. The fact that the examining physician may have certified that the legal settlement of some were in Douglas county can afford no authority for the charge. The law makes it the official duty of the commissioners, and their finding and certificate must control, unless it should be made to appear that they were untruthful upon a further investigation of the facts.

We therefore hold that under the law, as it now exists, each county in the state is liable to the state for the support of all insane persons sent to the hospital from such county, having a legal settlement therein, and that it is the duty of the county officers to levy, collect, and pay over to the state treasurer the amount necessary to pay the same, and that it is the duty of the respondents to levy the necessary taxes within the constitutional limit to pay the same, which is found to be $31,499.03, unless by agreement of parties, or upon reference, if so desired, a different sum shall be found to be due. But that no county is legally held for the support of those sent to the hospital by its officers, whose legal settlement is not in such county,

As respondents have signified their willingness to abide the determination of this case and levy such tax as may be ordered without a writ being issued, the writ of mandamus will be withheld and not issued unless in case of a refusal to comply with the judgment of the court.

JUDGMENT ACCORDINGLY.

MAXWELL, CH. J., dissenting.

I am unable to give my assent to the conclusion reached by the majority of the court and will state the reasons for my dissent. Sec. 46 of the act for the government of the hospital for the insane provides that, "The board of trustees shall from time to time fix the sum to be paid per

week for the board and care of patients, and to arrive at
such sum shall estimate the total outlay as far as possible
from the sums actually paid per annum, and the weekly
sum so fixed shall be the sum said hospital shall be en-
titled to demand for the keeping of any patient, and the
certificate of the superintendent, attested by the seal of the
hospital, shall be evidence in all places of the amount due
as fixed."

Sec. 47 provides that, "The superintendent shall certify
to the auditor of state on the first days of March, June,
September, and December the amount (not previously cer-
tified by him) due to said hospital from the several
counties having patients chargeable thereto, and said au-
ditor shall pass the same to the credit of the hospital.
The auditor shall thereupon notify the county clerk of
each county so owing of the amount thereof and charge
the same to said county, and the board of county commis-
sioners shall add such amount to the next *state tax* to be
levied in said county, and pay the amount so levied into the
*state treasury.*"

Under these provisions the sum of $4.00 per week for
each patient sent to the hospital was charged to the county
sending the same, and this continued till December 1st, 1879,
and since that time the charge has been $3.00 per week.
It is conceded that the sums thus charged, if collected, will
pay all expenses of the hospital. In *B. & M. R. R. Co.*
*v. Saunders County*, 16 Neb., 123, and *B. & M. R. R. Co.*
*v. Cass County*, 16 Neb., 136, this tax was held to be a
valid charge against a county. So far as this case is con-
cerned it can make no difference whether it is a county or
state tax. It is in fact a charge against each county based
on the number of patients sent to the hospital. It is not
material whether called a state or county tax, as the money
paid by the tax payers is levied and collected for the sup-
port of the hospital.

By the third paragraph of the stipulation of facts in this

case it appears that, "From the year 1873 to the year 1885, inclusive, the state board of equalization, and the state officers in that behalf provided, in deciding upon and fixing the rate of the general state tax (based upon the appropriation made each year by the legislature, which included all expenses of insane, including board and care of all patients) to be levied for each current year, included in the rate for general state tax each current year a sufficient amount *to meet all the expenses and expenditures of whatever nature connected with the maintenance of the insane hospital*, and including the cost for board and care of all patients as fixed and demanded according to the facts agreed in the foregoing statement No. 2, and such sum was levied for that purpose as a part of the general state tax the same as other general state taxes each year, and was collected and appropriated and used for defraying said expenses, including the board and care of all patients, and there is no deficiency in that regard. The respondent Douglas county paid said general state tax, which included said expenses."

It will be seen that the state officers in fixing the rate of taxation added to the general state tax the whole amount required each year for the support of the hospital for the insane. This tax has been collected each year and paid into the state treasury, and drawn out on the warrants of the auditor to defray the expenses of the hospital. The amount thus paid by Douglas county, so far as can be ascertained, is about equal to the aggregate of the charges against it for patients sent from that county to the hospital. That county, therefore, has, at least to the extent of the taxes above referred to, already paid and discharged the tax for the support of hospital for the insane. It is conceded that no part of the money now sought to be collected *is necessary* for the support of the hospital; but that as the statute makes the counties liable for patients sent by them to that place, that notwithstanding the expenses have

been paid by a levy on all the property of the tax payers in the state, still the counties are liable to the state upon this claim.    In answer to this objection we must consider that all appropriations made by the legislature are of a specific sum for a specific purpose, of which only "so much thereof as may be necessary" is to be expended.

Only so much, therefore, as was necessary to supply any deficiency that may have arisen from inability to collect some portion of the sum charged against each county for patients sent by it to the hospital should have been levied as a general state tax for the support of the hospital.    This would have been a very small sum.    If any of the counties failed to levy the tax to pay the charges, proceedings by mandamus in a proper case would have compelled action. As the most of the counties of the state failed to levy taxes to pay the charges for patients sent by them, and from un-certainty no doubt as to the validity of the provision making patients a county charge, the state board have caused a sufficient amount to be levied each year to pay all expenses of the hospital.    No doubt, under the circum-stances, they were justified in doing this.    But the tax thus levied and collected from a county for the support of the hospital should be credited to it against the charges for patients sent by it to the hospital.    The legislature never intended that the amount charged against each county for patients should be collected, and *also* an equal amount for the same purpose—the support of the hospital—by a general tax.    And the legislature, under our constitution, has no authority to impose double taxation.    Sec. 1, Art. 9 of the constitution provides that, "the legislature shall provide such revenue as may be needful by levying a tax by valuation," etc.    And Sec. 19, Art. 3, provides that, "each legislature shall make appropriations for the expenses of the govern-ment until the expiration of the first fiscal quarter after the adjournment of the next regular session, *and all appro-priations shall end with such fiscal quarter.*    And when-

ever it is deemed necessary to make further appropriations for deficiencies, the same shall require a two-thirds vote of all the members elected to each house, and *shall not exceed* the amount of revenue authorized by law to be raised in such time." That is, the legislature is absolutely prohibited from making appropriations beyond "the expiration of the first fiscal quarter after the adjournment of the next regular session."

Sec. 22, Art. 3, provides that, "no money shall be drawn from the treasury except in pursuance of a specific appropriation made by law, and on the presentation of a warrant issued by the auditor thereon, and no money *shall be diverted* from any appropriation made for any purpose, or *taken from any fund whatever*, either by joint or separate resolution," etc.

The constitution limits the power of the legislature in imposing taxes to such as may be necessary, and limits the time for which they may be imposed so that no appropriation can be made for a longer period than two years and a quarter. Sec. 9, Art. 3, also provides that bills appropriating money "shall originate only in the house of representatives." Now, will it be seriously contended that as the legislature is restricted by the constitution to such appropriations as are *needful*, and possesses no power to divert money raised for one purpose to a different one, and has no authority to make an appropriation beyond the first fiscal quarter after the adjournment of the next regular session, that it can evade the law by indirection and impose twice the amount of taxes necessary for any specific purpose. If so, a sufficient amount may be raised by direct tax to support the penitentiary, and a charge *per capita* against each county for the prisoners sent by it sufficient in the aggregate to pay all expenses, and the same rule may be applied to the deaf and dumb and blind asylums and other institutions of the state, and the treasury be filled with money for which there was no use whatever.

There is no power of government more liable to abuse than the taxing power; hence the constitution limited and restricted it. The effect of this decision, however, will be, I fear, to break down the barriers, and under various subterfuges fill the treasury with funds not required by the necessities of government. It may be said, however, that Douglas county sent a large number of patients to the hospital and is indebted to the state for their support. The answer to this is, that the charges against Douglas and other counties were for the support of the hospital—the tax to be levied for that purpose, a state tax for that identical purpose was levied on Douglas and other counties, and has been collected and paid. If Douglas county had not paid this state tax there would be force in this argument, but having paid the tax and thereby contributed its full proportion to the support of the hospital it has performed its full duty in that regard. The fact that the taxes were levied and collected—not as a charge against the county for patients sent to the hospital, but as a direct tax for its support, can make no difference where the money when collected in either way is to be applied to the same purpose—the support of the hospital. In either way the money is levied and collected by the counties and paid over by them to the state treasurer. The burden in either case must be borne by *the tax payers,* and having discharged their obligations once in that regard the legislature possesses no power to impose the same duty in a different form for the same purpose.

But it is said some of the counties have paid this tax, and others not, and it would be unjust to such counties as have paid to permit the others to avoid paying the tax. It appears that but a very small proportion of the counties have paid the per capita charge, there being less than $150,-000 in all collected. This the legislature can readily adjust by giving such counties credit upon the tax to be hereafter collected, so that there is no difficulty in that regard.

So in regard to any inequality in the burden in the different counties, as where the direct tax will amount to more or less than the charges for patients sent from that county. But to the extent of the direct taxes levied and paid by a county for the support of the hospital it should be credited as against any liability for patients sent from that county.

The attorney general has done well to call attention to these matters, in order that the validity of law may be tested and the proper steps taken to prevent double taxation. The writ should be denied.