THE COUNTY OF RICHARDSON, PLAINTIFF IN ERROR, V. PETER FREDERICK AND MARGARET TRUENBACH, DEFENDANTS IN ERROR.

1. **Insane:** EXPENSES OF KEEPING INSANE. Under chapter 40 of the Compiled Statutes of 1887, the brothers and sisters of an insane person are not liable for the expenses incurred in his treatment in the insane hospital during such insanity.

2. ———: ———: CONSTRUCTION OF STATUTE. Chapter 67 of the Compiled Statutes, entitled paupers, and which provides that the persons named shall be supported by their relatives, designated in the act, has no reference to the support and care of insane persons confined in the insane hospital at public charge.

ERROR to the district court for Richardson county. Tried below before APPELGET, J.

*Edwin Falloon,* for plaintiff in error, cited: *McClay v. Worrall,* 18 Neb., 44.

*E. W. Thomas* and *Isham Reavis,* for defendants in error, cited: *Monroe County v. Teller,* 51 Iowa, 670. *Speedling v. Worth County,* 68 Id., 152.

REESE, CH. J.

This action was instituted in the district court of Richardson county, by plaintiff in error, for the recovery of $1,727, with legal interest alleged to be due the county as the expenses of keeping a sister of defendants in error in the state insane hospital from May 18, 1876, to March 25, 1886.

The material part of the amended petition, which we copy from the brief of plaintiff in error, is as follows:

"On the 3d day of June, 1875, one Catharine Frederick was a citizen of said county, and had a legal settlement therein; that on said date Catharine was, by the board of commissioners of insanity of said Richardson county, adjudicated to be insane, and a proper person to be confined in said hospital for the insane of said state, and thereupon said Catharine Frederick was, by the order of said board, placed in said hospital at Lincoln in said state, and therein confined from May 18, 1876, to March 25, 1886, when she was removed therefrom as incurable; that the expense of keeping said Catharine Frederick in said hospital during said time was the sum of $1,727. A statement showing said expense, certified under the seal of the superintendent of said hospital, is hereto attached, marked 'Exhibit A,' and made a part hereof. That on the 5th day of August, 1886, plaintiff paid said sum, the amount of said expenses, into the treasury of the state of Nebraska for the use and benefit of said hospital for the insane; that said Catharine Frederick had no property or estate whatever during

said confinement in said hospital, or at any time since that time; that said defendants are the brother and sister of said Catharine Frederick; that her parents and grand-parents are dead, and that she has neither husband or children; that plaintiff has demanded of said defendants payment of said sum so by plaintiff paid for their use, and they have refused to pay the same, or any part thereof. Said defendants, Peter Frederick and Margaret Truenbach, are now and were at the time of said commitment, and since that time, of sufficient ability to support said Catharine Frederick, and had full notice of the action of said board at the time of the adjudication and order aforesaid."

To this amended petition defendants filed separate general demurrers, which were sustained by the district court and the cause dismissed.

Plaintiff in error brings the case to this court for review by petition in error.

A number of questions are presented by the briefs of counsel, but one of which we will notice, and that is, as to the liability of defendants in error to the county for money paid to the state on account of the maintenance and care of the insane person referred to in the petition.

The county bases its action, principally, upon section 48 of chapter 40 of the Compiled Statutes of 1887, which is as follows:

" The provisions herein made for the support of the insane at public charge, shall not be construed to release the estates of such persons nor their relatives from liability for their support, and the commissioners of the several counties are authorized and empowered to collect from the property of such patients, or from any person or persons legally bound for their support, any sums paid by the county in their behalf, as herein provided; and the certificate from the superintendent and the notice from the auditor of state, stating the sums charged in such cases, shall be presumptive evidence of the correctness of the sum so stated.    If

the board of county commissioners, in the case of any insane patient who has been supported at the expense of the county, shall deem it a hardship to compel the relatives of such patient to bear the burden of his or her support, they may relieve such relatives from any part or all of such burden as may seem to them reasonable and just."

It is contended that section 1 of chapter 67, Id., which provides for the support of paupers, fixes such liability upon defendants in error, for the indebtedness named, as they are within the list of persons mentioned in that section whose duty it is to support the poor. We think there is a clear distinction between the sections cited, section 1 of chapter 67, and section 48 of chapter 40; that distinction being as clearly marked as the one existing between the chapter treating of paupers and the one "For the government of the hospital for the insane, defining the legal relations of insane persons and providing for their care and protection."

In the first named act aid is given to a poor person, unable to earn a livelihood, upon application and request for such assistance. In the law governing insane persons, it is provided that, upon information verified by affidavit being filed, the commissioners of insanity shall at once take steps to investigate the grounds of the information, and they may issue their warrant for the arrest of the person charged and bring him before them, that the examination may be had in his presence, if they think proper so to do. The insane person is not consulted as to whether he shall be deprived of his liberty or not, nor indeed are his friends or relatives.

As is said in *The County of Delaware v. McDonald*, 46 Ia., 171 : "The state reaches out its strong arm and makes the insane its wards, regardless of the care which they may receive at home, or the wishes of those upon whom they are dependent for their support."

The poor are not deprived of their liberty, and we

know of no law which would even permit the county or state authorities to wrest such persons from the care and custody of relatives and friends and confine them in a poor house, nor would they be so confined against their own consent, for no other reason than that they were "unable to earn a livelihood in consequence of any bodily infirmity," etc. With the insane it is entirely different. The state asserts its rights, for the reason an insane person may often need more than a mere maintenance. He often needs restraint, confinement, medical attendance, and peculiar care and treatment. Society is entitled to be protected and relieved against him, and when this is so, the state very properly takes charge of him and makes him its ward. Dismissing, therefore, from our consideration the chapter providing for the support of paupers, we next inquire whether there is anything in the act included in chapter 40, for the care of the insane, which imposes any' legal liability upon defendants in error for the payment of the demand of the county. We think clearly not. The legislature seems to have had in mind the fact that at some time such legislation as would create this liability would be enacted, and that the sections preceding the one quoted might not be so construed as to release the estates of insane persons or their relatives from such liability; therefore it is provided that such construction shall not be given the provisions made in the act for the support of the insane at public expense, and it is further provided that the county commissioners may collect from the property of the patient, or "from any person or persons legally bound for their support," any sums paid by the county for their care at the hospital.

Section 48 is substantially a copy of section 1433 of the code of Iowa, and in *Monroe County v. Teller*, 51 Ia., 670, the question here presented was decided, and it was held that the defendant in that case was not liable for the support of his son, who, at the time he was committed to the

asylum, was over twenty-one years of age. It was there contended that the defendant was liable under section 1 of title 11 of the code of that state, which provides that "the father, mother, and children of any poor person who is unable to maintain himself by work shall jointly or severally relieve or maintain such poor person in such manner as may be provided by the trustees of the township where such poor person may be," etc, but the court, by Rothrock, J., said: "It is not claimed in this case that at the time the defendant's son was sent to the hospital he was a pauper, nor that he was a county charge, nor that he ever has been, within the meaning of chapter 1, title 11. That chapter only has reference to relief for the poor, that is to such as apply to the proper authorities for relief because of poverty."

The same thing is substantially held in *Speedling v. Worth County*, 68 Ia., 152, in which the father of the insane person was permitted to recover of the county the value of his services in caring for her, she having been, before that time, found to be insane by the commissioners of insanity.

It is quite clear that nothing can be found in the chapter for the government and custody of the insane which would make defendants in error "legally bound" for the support of their insane sister, under the allegations contained in the petition.

It is claimed by counsel for plaintiff in error that "This action is the product of the *State v. Douglas County*, 18 Neb., 601," referring, we presume, to that clause in the opinion on page 609, in which the following language occurs: "It is very properly provided by section 48, Id., that the estates and relatives of insane persons, when able to do so, shall reimburse the county for the money paid, thereby making the counties the losers only to the extent of money paid out for those who are unable to support themselves."

This language is all that we are able to find in the opinion that could be construed to have any bearing upon this question. The section referred to was not under consideration, as the point in that case was, as to the liability of the county to the state for money paid by the state for the care of insane persons sent from such county, and in discussing the question of the power of the legislature to impose the burden upon the county, and which was held to exist, and by it possibly improperly exercised, the language referred to was used, perhaps unnecessarily, but for no other purpose than as an argument. The question here presented was not before us, and it is very clear, upon an examination of that opinion, that it was not the purpose of the court to pass upon its provisions. The reference to it was incidental and argumentative, rather than otherwise. While the section does make provision for the method of recovery of the expense of keeping the insane, from those legally bound, yet there is no statutory liability imposed by the act. If there is any person legally bound, that liability is created by common law and not by statute. If imposed by the common law, brothers and sisters are not within the rule.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.