## JAMES H. BALDWIN v. DOUGLAS COUNTY.

### FILED JUNE 29, 1893.    No. 5013.

Constitutional Law: LIABILITY OF HUSBAND TO COUNTY FOR
SUPPORT OF INSANE WIFE. The provision of the statute
authorizing suit to be maintained against the party legally
bound for the support of an insane person, by the county which
has paid for the care, board, and treatment of such insane per-
son at the insane hospital of this state, upon the finding of such
insanity by the commissioners of said county, is in conflict with
section 1, article 9, of the constitution of Nebraska, and is
therefore inoperative and void.

ERROR from the district court of Douglas county. Tried
below before TIFFANY, J.

*Connell & Ives* and *John Q. Burgner*, for plaintiff in
error.

*T. J. Mahoney, contra.*

RYAN, C.

The defendant in error, as plaintiff in the district court
of Douglas county, filed its petition against the plaintiff in
error, as defendant, on the 23d day of July, 1889, contain-
ing, in addition to proper allegations of its own corporate
existence, the following material averments: That on May
26, 1876, and ever since, the defendant was, and has been,
the husband of Mary M. Baldwin and legally liable for
her support and maintenance; that on said last named date
Mary M. Baldwin, having a legal settlement in said Doug-
las county, Nebraska, and being adjudged insane by the
board of commissioners of insanity of said county, was
committed to the Nebraska state insane asylum, and that
ever since said date she has been insane and continued an
inmate of said asylum at the cost and expense of said
Douglas county; that said county has been compelled to

pay for her support and maintenance for the period beginning at the above date and ending with May 31, 1889, the sum of $2,220.94; that said support, maintenance, and care in said asylum was necessary for such insane person, and should have been provided by Douglas county aforesaid, by reason whereof the said defendant James H. Baldwin became justly indebted to said plaintiff in the sum of $2,220.94. There was a prayer for judgment for said sum with seven per cent per annum interest thereon from May 31, 1889.

The defendant demurred to this petition on the ground that it did not contain facts sufficient to constitute a cause of action. This demurrer was overruled and defendant duly excepted. Afterward there was filed an answer, by which was admitted the truth of the allegations that Mary M. Baldwin was the wife of the defendant, and that she was insane. Every other allegation of the petition was denied by this answer. Defendant also pleaded the statute of limitations as against plaintiff's claim. By reply, plaintiff denied each allegation in the defendant's answer.

On the 12th day of November, 1890, a trial of the above issues was had, in which, by instructions, the court withdrew from the consideration of the jury all items which had accrued anterior to July 23, 1885, being four years before this suit was begun, on account of the bar of the statute of limitations. The jury were instructed that the husband is liable for the support of his wife, and that the statute of Nebraska authorizes the bringing of an action against the husband for any sums plaintiff had been required to pay out for the wife's support in the insane hospital; that if defendant's wife became insane and was committed to said insane hospital where the plaintiff Douglas county had been compelled to pay for her support and treatment, said plaintiff could recover from said defendant said amount so expended. The defendant requested the giving of certain instructions submitted on his behalf,

whereby the jury would have been informed that if defendant at all times was ready and willing to provide for his said wife's maintenance and care, plaintiff could not recover, and that upon the proofs the defendant was not liable to plaintiff for the care, maintenance, and treatment of Mrs. Baldwin. These instructions asked by defendant were refused, and due exceptions were taken to such refusal. The jury found a verdict against the defendant for $628.60, upon which judgment was rendered. To reverse this judgment the defendant, against whom it was rendered, filed his petition in error in this court, in which he of course appears as plaintiff in error.

The evidence was introduced by the contending parties upon the respective theories indicated by the pleadings, and thus by demurrer, the evidence, and the instructions given and refused there is presented unequivocally for determination the proposition whether or not the statute of this state authorizes the bringing of an action against a husband for any sums the county may have been required to pay out for the support of his wife in an insane hospital of the state. The defendant in error attempts to modify the sharp outlines of this proposition by calling attention to the fact that the information of insanity, as it is called, was signed and sworn to by plaintiff in error. This, however, as its name imports, was simply a sworn statement that Mary M. Baldwin was a fit subject for custody and treatment in the hospital for the insane, as affiant verily believed, and that she had a legal settlement in said Douglas county, and asking that the necessary steps should be taken to investigate her condition as the law in such cases required. This was only a request that the board investigate her condition and ascertain whether or not such derangement of the mind existed as that the patient should be sent to the insane hospital for care and treatment, her maintenance being simply incident thereto. Upon a like showing by another person the same steps would have fol-

lowed as did in this case, and it would then hardly have been contended that thereby the informant rendered himself liable in the same measure as it is sought to hold the plaintiff in error for in this case. Not only so, but the petition failed to declare upon this information of insanity as a contract, and from all these reasons it follows that in the determination of this case we are confined solely to the question above stated.

The statute under which the liability of the plaintiff in error is claimed to have arisen is chapter 40, Compiled Statutes of Nebraska; particularly section 48, which is in the language following:

"Sec. 48. The provisions herein made for the support of the insane at public charge shall not be construed to release the estates of such persons, nor their relatives, from liability for their support, except from the cost of board, care, and treatment while in the hospitals of the state, which cost of board, care, and treatment shall be borne by the state; and the commissioners of the several counties are authorized and empowered to collect from the property of such patients, or from any person or persons legally bound for their support, any sum paid by the county in their behalf, as herein provided; and the certificate from the superintendent, and the notice from the auditor of state, stating the sums charged in such cases, shall be presumptive evidence of the correctness of the sum so stated. If the board of county commissioners, in the case of any insane person who has been supported at the expense of the county, shall deem it a hardship to compel the relatives of such patient to bear the burden of his or her support, they may relieve such relatives from any part or all of such burden, as may seem to them reasonable and just."

Under the provisions of the section just quoted, the cost of the board and treatment of the inmates of the insane hospital must be borne by the state. Let us now consider the manner and extent to which the state is entitled to reim-

bursement for these outlays. Section 19 of article 3 of the constitution of Nebraska requires the legislature to make needful appropriations for the expenses of the government of the state. Section 19, article 5, creates and gives to a board so created general supervision and control of the public lands and grounds of the state, the state prison, asylums, and all other institutions thereof, except those for educational purposes. These duties of this board are more fully defined by statute. (See art. 7, ch. 83, Comp. Stats.) The governor, auditor of public accounts, and treasurer are, by sections 74 *et seq.*, chapter 77, Compiled Statutes, constituted the state board of equalization, which decides each year upon the rate of state tax, and equalizes and makes the levy thereof throughout the state. By these state authorities the levy of taxes for the support of the insane hospital is required in the same general mode as obtains in the levy of taxes for other state purposes. Section 47, chapter 40, Compiled Statutes, however, requires the superintendent of the insane hospital to certify to the auditor of state, at fixed times, the amount due to said hospital from the several counties having patients chargeable thereto, and upon notice given by the said auditor to the county clerks respectively of each of said counties, the county commissioners must add such amount to the next state tax to be levied on each county, and payment of the amount so levied must be made into the state treasury. To enforce the performance of this duty a *mandamus* proceeding was prosecuted in this court against the defendant in error herein, resulting in an order granting the writ as prayed. (*State, ex rel. Att'y Gen'l, v. Douglas County*, 18 Neb., 601. There was filed in that case a dissenting opinion by Chief Justice MAXWELL, so that the propositions therein discussed cannot as yet be recognized as settled beyond question; indeed, having regard simply to the weight of argument, we believe the views of the chief justice should have prevailed.

The defendant in error insists that the liability fixed upon it by section 47, chapter 40, Compiled Statutes, and enforced in the above case, logically countenances the provisions of section 48 of the last mentioned chapter. As has already been suggested, the annual cost of maintaining the insane hospital is provided for by a general tax, levied with reference to the assessed valuations of the respective counties; again, by virtue of section 47, *supra*, the amount due the hospital for the care, board, and treatment of the insane must be paid by the several counties, reference being had to the amount expended in that behalf for the insane properly chargeable to each county. Thus it would seem that the taxpayer has twice paid taxes for this one purpose. The proposition involved in this proceeding is, whether or not a taxpayer of Douglas county, who has already, in common with other taxpayers, twice met the burden of taxation for the support of the insane, shall again be required to contribute to the same end because of insanity within his family circle.

In *Richardson County v. Frederick*, 24 Neb., 596, the relation of brother or sister to the afflicted was held not to justify this special exaction, and in *Richardson County v. Smith*, 25 Neb., 767, the same freedom from liability was adjudged as to the children of the insane. In the case at bar, the liability is charged by reason of the marital relation existing between the patient and the plaintiff in error. It is insisted that this liability exists because the husband is legally bound for the maintenance and care of his wife. The evidence in this case shows that the husband never failed to meet these requirements. It was upon an inquisition of insanity duly held by proper county authorities that Mrs. Baldwin was adjudged insane and a proper subject for treatment in the insane hospital. In the language of REESE, Ch. J., in *Richardson County v. Frederick*, *supra*, "The insane person is not consulted as to whether he shall be deprived of his liberty or not, nor indeed are

his friends or relatives. As is said in the *County of Delaware v. McDonald,* 46 Ia., 171, the state reaches out its strong arm and makes the insane its wards, regardless of the care which they may receive at home or the wishes of those upon whom they are dependent for their support. * * * The state asserts its rights for the reason an insane person may often need more than a mere maintenance. He often needs restraint, confinement, medical attendance, and peculiar care and treatment. Society is entitled to be protected and relieved against him, and when this is so, the state very properly takes charge of him and makes him its ward."

We know of no principle of equity or justice that under these circumstances would imply a contract by the husband to answer for the treatment of his wife, furnished by the state in the interest of the general public. It would seem that the public thus benefited should defray all expenses incurred for its protection. Certainly, the husband is not liable therefor unless by virtue of the statute already quoted. As has already been intimated, perhaps, we more than doubt the existence of an enforcible statutory liability. The husband has already twice paid for the maintenance of the insane hospital. This was upon his property. If he is required to pay for the treatment of his wife, this payment is just as much a compulsory contribution to the maintenance of the insane hospital as was either of the others. It is in fact another form of taxation for the same purpose. The right to levy taxes can only be justified as being necessary for the performance of its functions by the state. No tax can be legally levied for any purposes foreign to those functions, and, even that far, taxation is tolerated only from the necessities of the case. The collection of unnecessary revenue by the state is not taxation. It is robbery. The plaintiff in error has already paid his full proportion toward the maintenance of the insane hospital. More than that the authorities cannot constitutionally exact. Suppose

Baldwin v. Douglas County.

the taxes under consideration had been levied for school purposes, could any principle be found that would justify a statutory requirement that a certain class of taxpayers should, in addition to the common burden, be required to pay a special tax *per capita?*   Manifestly such a procedure would be wholly unjustifiable, even where the common tax is unequal to the requirement for school purposes; how much more glaring the injustice where the taxpayer has already contributed his full, fair proportion of all that is necessary.   Again, suppose the state constructs a work of internal improvement, which of necessity adds value to neighboring property, could the owner of such benefited property, with any justice, be required to pay a special tax on account of this increment, in addition to his payment of assessments common to all property within the state?   No one would justify such a system of assessments, and yet in principle it differs little from that under consideration. The statute which purports to authorize the recovery from the persons legally bound for the support of an insane person, of the sum paid by the county for the care and treatment of such insane person at the insane hospital of this state, when such care and treatment have been *furnished* upon the finding of the proper commissioners of the county, for the reasons stated, is in conflict with section 1, article 9, of the constitution, and is therefore inoperative in so far as it purports to confer said right of action upon the county. The judgment of the district court is

REVERSED.


THE other commissioners concur.