(120 N. W. 47.)

---

THE STATE OF NORTH DAKOTA, EX REL. T. F. McCUE, ATTORNEY GENERAL, v. ARTHUR G. LEWIS, AS AUDITOR OF CASS COUNTY, STATE OF NORTH DAKOTA.

Opinion filed January 29, 1909.

### Asylums — Maintenance — County Liability.

1. By chapter 23, page 18, Laws 1907, the legislature appropriated the total sum of $86,600 for the purpose, as stated, "of paying the current and contingent expenses and for permanent improvements of the Institution for the Feeble Minded at Grafton for the period beginning March 1, 1907, and ending March 1, 1909." Out of such sum but $11,500 was appropriated for maintenance of said institution. By chapter 237, page 374, Laws 1907, "the person legally responsible for the support of any person * * * admitted to said institution shall pay semi-annually to * * * said institution the sum of fifty dollars; but if the person so liable be unable to pay such sum * * * it is hereby made a charge upon the county." Such act requires the county auditor, when furnished with certain proof therein required, to transmit to the superintendent of such institution his warrant as such auditor for the sum of $50 every six months, such payments, or so much thereof as may be necessary, to be expended in providing suitable clothing for the inmate, any excess remaining to be covered into the state treasury at stated times and credited to the fund for the maintenance of the institution. *Held*, that said acts are in pari materia, and, when construed together, they clearly disclose the legislative intent that the appropriation of

$11,500 for maintenance of such institution should be supplemented to the extent of payments required to be made under the provisions of chapter 237 aforesaid.

**Same.**

2. The fact that such institution has sufficient money in its maintenance fund derived from the appropriation and voluntary payments made pursuant to the provisions of chapter 237, page 374, Laws 1907, by other counties and by persons legally liable for the support of inmates, is no defense in a proceeding by mandamus to compel the county auditor of C. county to transmit his warrant to the superintendent of such institution, as required by chapter 237 aforesaid.

**Same.**

3. It is undoubtedly within the power of the legislature to take charge of and provide for the indigent insane and feeble minded persons within its boundaries by general taxation, and to relieve the several counties from such burden except as they bear their proportion through such taxation. It is equally within the power of the legislature to require each county to maintain its own indigent persons, or to reimburse the state in whole or in part for so doing. The fact that the institution for the feeble-minded is a state institution in no manner restricts or limits the legislature in the exercise of such power. There is nothing in the provisions of section 174 of the constitution of this state which deprives the legislature of the exercise of such power.

**Constitutional Law — Management of Fiscal Affairs of County.**

4. The contentions that chapter 237 aforesaid is unconstitutional, as being violative of sections 69, 172, 174 and 186 of the state constitution, are not sustained.

Appeal from District Court, Cass county; *Pollock, J.*

Mandamus by the state, on the relation of T. F. McCue, Attorney General, against Arthur G. Lewis, as auditor of Cass county. Judgment for relator, and defendant appeals.

Affirmed.

*Barnett & Richardson,* for appellant.

*Jeff M. Meyers,* for respondent.

FISK, J. As stated by appellant's counsel: "The above-entitled action is a proceeding brought by the Attorney General of the state of North Dakota against the defendant, as county auditor of Cass county, asking for the issuance of a writ of mandamus directing said defendant to transmit to the superintendent of the Institution for the Feeble-Minded of Grafton, N. D., three warrants in the sum of $50 each, payable to said superintendent, by virtue of the

provisions of chapter 237, p. 374, of Laws 1907, and particularly section 1167, Rev. Codes 1905, as amended by said act. This section provides that, if the county judge of the county from which any indigent inmate is admitted shall certify that such inmate is unable to pay the sum of $50 semi-annually to the said institution, it is made the duty of the county auditor to transmit a county warrant for $50 semi-annually for each patient so situated upon presentation of the proper certificate of the superintendent from said institution. It is admitted that on July 1, 1907, there were three inmates in said institution which had been admitted to said institution from Cass county, and that said inmates are dependent upon the county for support and are indigent, and that the county judge of Cass county has duly certified to that effect in Exhibits A. B. and C. It is also admitted that proper certificates have been presented by the superintendent of the said institution to this defendant demanding that the defendant transmit his warrant under the terms of chapter 237 of the Laws of 1907 aforesaid, and that the defendant refused, and still does refuse, to so transmit his warrant. Thereupon the above-entitled proceeding was commenced seeking to compel this defendant to issue his warrant according to the provisions of section 1167, aforesaid. No question is raised in this proceeding as to the solvency of Cass county." The learned trial court awarded a peremptory writ as prayed for by the relator, from which decision this appeal was taken.

By chapter 23, p. 18, Laws 1907, the legislative assembly appropriated the sum of $86,600 for the purpose, as stated in the act, "of paying the current and contingent expenses and for permanent improvements of the Institution for the Feeble-Minded at Grafton, for the period beginning March 1, 1907, and ending March 1, 1909." The specific purposes for which such appropriation was made are enumerated in the act as follows:

| | |
|---|---:|
| For maintenance | $11,500 |
| For employes' wages, including officers' salaries | 24,000 |
| For fuel and lights | 9,000 |
| For training school supplies and amusements | 400 |
| For incidental expenses | 1,000 |
| For drugs medicines, etc | 500 |
| For repairs | 500 |
| For plumbing | 250 |
| For beds and bedding | 600 |

| | |
|---|---:|
| For furniture ............................. | 600 |
| For electrical supplies and repairs ............ | 100 |
| For supplies for engine room ................. | 400 |
| For laundry machinery and repairs ............ | 200 |
| For paints and painting ..................... | 750 |
| For farm implements and vehicles.............. | 600 |
| For new power house, including water tank and tower ................ ............. | 15,000 |
| For remodeling west wing .....:............. | 12,000 |
| For fire apparatus and water connections........ | 1,000 |
| For farm house repairs ...................... | 500 |
| For granary and machine sheds ................ | 800 |
| For stock ......... ..................... | 400 |
| For improvement to grounds ............. ....... | 500 |
| For additional land ......................... | 6,000 |
| | |
| Total ............ ..................... | $86,600 |

It is appellant's contention, among other things, that by such act the Legislature intended such appropriation to be sufficient, and that it in fact is sufficient, for all the needs of said institution, during the present fiscal term, for maintenance, including funds necessary to purchase clothing for the inmates. It will be seen that, by the provisions of the above act, the sum of but $11,500 was appropriated for maintenance. Just what the Legislature intended to include within the term "maintenance" is not clear, but it does appear that the same was not intended to cover employes' wages and salaries, fuel and lights, school supplies, incidental expenses, drugs and medicines, repairs, beds, and bedding, furniture, and the other items for which specific sums were appropriated. There being no specific appropriation for food and clothing of the inmates, it follows that the same was intended to be covered by the $11,500 item appropriated "for maintenance," and, without reviewing the testimony at length, suffice it to say that we are entirely convinced from the record that such appropriation is not sufficient to cover these items during the fiscal term. In fact we do not understand appellant's counsel to contend to the contrary, but they do contend that of the total amount appropriated for all funds there is a sufficient amount, and that the emergency board is empowered to increase the maintenance fund by transferring to such fund moneys belonging to other funds of said institution. This latter contention we will notice later.

When we examine chapter 237, Laws 1907, together with sections 6, 8, 9, c. 108, pp 143, 144, Laws 1903, which were amended by the said act of 1907, we are forced to the conclusion that the legislative intent was to supplement the appropriation for maintenance of said institution by requiring the payment of $100 per annum by the person legally responsible for the support of any inmate, and to make such payment a county charge in cases of indigent inmates. By the provisions of section 3 of chapter 237 aforesaid, it is provided that such payments shall be credited to the inmate for whom it shall have been received, "and so much thereof as may be necessary shall be expended in providing suitable clothing for such inmate, and, at the expiration of one year, such superintendent shall place the excess over the actual expense of providing such clothing to the credit of the state for the benefit and use of the maintenance fund of said institution, * * * and, in case of the death or removal of such person so admitted before the termination of the annual period for which such payment is made, the board of trustees shall reimburse pro rata the persons or counties so paying, respectively." Said act and chapter 23 aforesaid are in pari materia, and should be construed together, and, when thus construed, the legislative intent as above stated is well nigh conclusive. Chapter 23 was approved March 2, 1907, and Chapter 237, supra, was approved five days later, clearly showing that both bills must have been under consideration by the legislative assembly at the same time. We conclude, therefore, upon this branch of the case, that it was intended that any balance remaining out of the annual payments of $100 for the clothing of inmates should be covered into the state treasury and placed to the credit of the maintenance fund of such institution, and to this extent such maintenance fund appropriation should be supplemented. Consequently it could not have been, and was not, the legislative intent by the appropriation covered by chapter 23, aforesaid, to provide a "full and complete appropriation for the operation and maintenance of this institution," as argued by appellant's counsel.

But it is strenuously and ingeniously contended by them that, with the exception of a small deficit, there are sufficient moneys in the various funds appropriated as aforesaid to maintain and operate said institution for the remainder of the fiscal year without taking into consideration any moneys which have been received or are due from inmates or counties under the provisions of chapter

237 aforesaid, and the emergency board can transfer such funds to the maintenance fund. It is also urged by such counsel, as a reason why relator should not prevail, that the foregoing funds as supplemented by the voluntary payments made by inmates and certain counties under said act are amply sufficient for all the needs of such institution for the present fiscal period. Such contentions do not appeal to us with favor, and we deem them unsound on principle. If the act in question (chapter 237, Laws 1907) be constitutional, and we shall presently determine this question, we do not see why Cass county should escape liability under said act merely because the present needs of such institution are or may be sufficiently supplied through the action of the emergency board and the voluntary payments aforesaid. Counsel concede that, even with the aid of the emergency board, a deficit would arise unless the fund for maintenance is supplemented by payments from inmates and counties, which is a potent fact to be considered in arriving at the legislative purpose in the enactment of the statutes above mentioned. If the law which is sought to be enforced by this proceeding is a valid enactment, then this public institution ought not to be financially embarrassed, nor should it be required to rely upon the emergency board to enable it to obtain available funds for its maintenance.

A somewhat similar question to the one here involved arose in the state of Nebraska in the case of State ex rel. Attorney General v. Commissioners of Douglas County, 18 Neb. 601, 26 N. W. 378. The majority opinion in that case goes much farther than we are required to go in the case at bar in upholding respondent's contention. In the Nebraska case it was an agreed and stipulated fact that the amount of tax levied by the state was sufficient to maintain the hospital, including the payment of all the expense of board, etc., of all the patients, and hence it was wholly unnecessary for the maintenance of such institution that any further burdens should be imposed upon counties having patients in such institution under the provisions of the statute there in question. But, in the face of these conceded and stipulated facts, the majority of the court upheld the right to exact from the counties the payments required by the statute. We quote from the majority opinion as follows: "It must be borne in mind that the question is simply one of the power of the Legislature to impose the tax. All suggestions as to its expediency must be banished from the case. The

legislative department being one of the coordinate branches of the government of the state, cannot be controlled by the courts, so long as it acts within its jurisdiction, and the limitations of the Constitution. In fact, within those limits it is the supreme and controlling power of the state, and both the executive and judicial must yield a willing obedience to its mandates." Whether under the conceded facts in that case the majority or minority opinion is sound upon the proposition regarding which the court was divided we express no opinion, but under the facts in the case at bar we consider both opinions in point as supporting respondent's contention upon this branch of the case. In the majority opinion it is also said: "By the statement of facts agreed upon, it appears that the tax imposed by the state at large is and has been sufficient for the support and maintenance of the hospital, and that, in addition thereto, each county is required to impose a tax sufficient to pay the expense of its patients who are there confined. It is clearly within the power of the Legislature to provide for the maintenance of the insane by general taxation of the state, and to relieve the several counties from the burden, except as they bear their proportion with the other counties of the state, or to require each county to maintain its own insane in hospitals provided by them, or to pay the expense of the maintenance of their insane in a hospital provided by the state. In this each state has adopted the course which to its Legislature has seemed most judicious, and we think it is clearly within the legislative power to provide by law and taxation in the first instance for the support of the insane by the state, and then require the counties, which otherwise would have to support the insane having a residence within their borders, to repay the state the amount thus expended. Any other view would leave the care of this, the most unfortunate class of our citizens, to the will and caprice of the several boards of the several counties in the state, which would result in anything but a harmonious system of caring for them." The dissenting opinion by Maxwell, C. J., recognizes the power of the Legislature to require counties to reimburse the state for the expense of maintaining insane patients, and the dissent is put on the ground that the counties had already been taxed for and had paid their pro rata share of the entire sum necessary to maintain such patients, and hence that to require them to pay again under the statute in question would be subjecting them to double taxation, and this the Legislature has no

power to do under the Constitution. In the later case of Baldwin v. Douglas County, 37 Neb. 283, 55 N. W. 875, 20 L. R. A. 850, there is an intimation that the dissenting opinion of the Chief Justice in the former case was right and the majority opinion wrong, but, as before stated, the point involved and upon which the court disagreed in that case is not involved, under the facts, in the case at bar. The Supreme Court of our sister state of South Dakota in the case of Bon Homme County v. Berndt, 15 S. D. 494, 90 N. W. 147, is on record in a well-reasoned and to our minds sound opinion supporting the rule announced by the Nebraska court in State v. Douglas County, supra.

Counsel for appellant attempts to differentiate the case at bar from the Nebraska and South Dakota cases upon the ground of a difference in the statutes relative to the method required of the counties in raising funds with which to reimburse the state. The statutes in South Dakota and Nebraska respectively, require the counties to levy and collect a tax sufficient to raise a designated sum with which to reimburse the state for the approximated expense of maintaining such patients, while the North Dakota statute (chapter 237, Laws 1907) merely provides for the payment of an arbitrary sum, without prescribing the method of raising the same, for the purpose of clothing each inmate, any surplus remaining to be covered into the state treasury and credited to the maintenance fund of such institution. We are unable to discover any vital distinction on principle between these statutes. If, as held by the South Dakota and Nebraska courts, it is within the power of the Legislature to require the counties to pay the entire expense of maintaining their insane, it is certainly within the power of the Legislature to require them to defray a portion of such expense, and this is all our statute does. The manner of raising such fund must necessarily be by taxation.

It is next contended by appellant's counsel that the institution for the feeble-minded is a state institution, and hence funds for its maintenance must be provided for as prescribed in section 174 of our Constitution. While it is true that such institution belongs to the state, it in no manner follows that the Legislature has not the power to provide for its partial or entire maintenance by the respective counties, as was expressly held in the foregoing authorities. The contention that chapter 237 aforesaid is unconstitutional because the payments exacted thereunder constitute a tax in excess

of 4 per cent., and hence violates section 174 of the Constitution of this state, is wholly without merit, the same being based upon a false premise as we have sufficiently shown above. The whole fallacy of appellant's contention upon this point lies in the unwarranted assumption that, because this institution is owned and controlled by the state, its maintenance and the maintenance of the inmates thereof are necessarily a state charge, and that the Legislature has no power to require the respective counties to maintain their indigent inmates or to aid the state in maintaining them. As before stated, the Legislature has the undoubted power to require the counties to pay all or any portion of the expense of maintaining such inmates. What we have just said sufficiently disposes of appellant's contention that chapter 237 is violative of subdivision 23 of section 69 of our Constitution. The argument that said act is special legislation with reference to the assessment and collection of taxes, and also with reference to the powers and duties of county auditors, is not supported by the citation of any authority, and is not deserving of serious consideration. The act is clearly general in its operation. Vermont Loan & Trust Co. v. Whithed, 2 N. D. 82, 49 N. W. 318.

It is next asserted that said act violates the provisions of section 172 of our Constitution, which provides that the fiscal affairs of a county shall be transacted by a board of county commissioners. This contention, to our minds, is as devoid of merit as those we have just noticed. It could not have been the intention of the framers of the Constitution by the adoption of section 172 to prohibit the Legislature from enacting laws similar to chapter 237 aforesaid, but it was their intention merely to vest in the board of county commissioners "the business transactions of the county— the performance of such duties as the law has defined and placed upon county commissioners, or such as uniformly pertain to that office." Martin v. Tyler, 4 N. D. 278, 60 N. W. 392, 25 L. R. A. 838. It was held by this court in said case that the words "fiscal affairs," as used in the Constitution (section 172), "are not limited to matters pertaining solely to public revenue, as they doubtless are in some connections." And, again, in the later case of State v. Heinrich, 11 N. D. 31, 88 N. W. 734, this court used language recognizing the power of the Legislature to require the payment of claims and demands against counties without first being audited by the board of county commissioners. We quote: "The board of

county commisisoners have the general superintendence of the fiscal affairs of the county, and constitute a board of audit for all claims and demands against their counties, the amounts of which are not fixed by law." See also, State v. Albright, 11 N. D. 22, 88 N. W. 729, wherein the power of the Legislature to require the payment of salaries of county officers as fixed by law without first being audited by the county commissioners is recognized.

Counsel for appellant also argue that the act in question contravenes the provisions of section 186 of the Constitution of this state which provides: "No bills, claims, accounts or demands against the state, or any county or other political subdivision, shall be audited, allowed or paid until a full itemized statement in writing shall be filed with the officer or officers, whose duty it may be to audit the same." A sufficient answer to such contention has, we think, been made by what we have just said regarding appellant's last contention. Furthermore, section 186 by its language clearly applies only to those accounts or demands, the audit of which is made the duty, by law, of some officer, and under the act in question there is no duty devolving upon the county auditor to audit the claims therein mentioned.

It is next urged that the act in question fixes a specific, arbitrary sum to be paid for each inmate, and that the sum fixed is excessive. The record does not support counsel's last contention; but be that as it may, it is entirely clear and the Supreme Court of Nebraska in State v. County of Douglas, supra, so held, that "this must in the first instance at least be left to the wisdom of the proper department of the government." Unless the amount fixed by the Legislature is clearly unreasonable, its payment will be enforced.

Having disposed of each of appellant's points adversely to his contention, it follows that the judgment appealed from must be, and the same is accordingly, affirmed. All concur.