# STATE OF NORTH DAKOTA EX REL. A. P. LENHART v. L. B. HANNA et al.

## (149 N. W. 573.)

**Revenue — taxes — assessment — levy — educational institutions — constitution.**

1. The legislative assembly by various acts has assumed to levy taxes to raise revenue for the maintenance of certain educational institutions and for other purposes, and by chapter 148, Laws 1913, it levied a tax of 1⅛ mills on each dollar of the assessed valuation of all taxable property in the state for the maintenance of certain designated educational institutions. Section 174 of the state Constitution directs the legislative assembly to provide for raising revenue sufficient to defray the expenses of the state for each year, not to exceed in any one year 4 mills on the dollar of the assessed valuation of the property in the state. Pursuant to such constitutional mandate the legislature, by §§ 1531 and 1538, Rev. Codes 1905 (§§ 2141 and 2148, Comp. Laws 1913), designated the state board of equalization as the agency for levying state taxes, but limited its powers to the "amount necessary to raise for the purpose of meeting the *appropriations made* by the legislative assembly and the estimated general expenses of the state as made by the auditor."

The state board of equalization at its 1914 meeing, which has not adjourned, assumed to levy 3 mills for the purposes designated in said statute, and but 1 mill in addition to meet the special levies made by the legislature in the various acts aforesaid, leaving but a fraction of a mill for the educational institutions. It is *held* that in doing so the board exceeded its powers in that it attempted to impose a tax to raise revenue greatly in excess of that required to meet appropriations made by the legislature and the estimated general expenses of the state. It is also held that such excess, if eliminated, will enable the board, within the 4-mile limit, to levy the full amount for the educational institutions provided for in chapter 148.

**Statute — constitutionality.**

2. The question of the constitutionality of chapter 148, Laws 1913, not decided for reasons stated in the opinion.

**Limit of taxation — constitution.**

3. Section 174 of the Constitution, fixing the limit of taxation for state expenses at 4 mills, was intended to thus limit the raising of revenue for all state purposes whatever, excepting for the purpose of paying the interest on the state debt.

**Board of equalization — amount of state levy — past appropriations — anticipated appropriations.**

4. Sections 1531 and 1538, Rev. Codes 1905 (§§ 2141 and 2148, Comp. Laws 1913), construed, and *held* to limit the state board of equalization, in making the state levy, to an amount necessary to meet past appropriations made by the legislature and the estimated general expenses of the state; and in assuming to make provision for meeting anticipated appropriations to be made in the future, the board exceeded the powers delegated to it.

**Purpose for which a tax may be levied — legislative function — cannot be delegated.**

5. Defining the purpose for which a tax may be levied is the exclusive function of the legislative assembly, and such function has not been, nor can it be, delegated to any board or person.

Additional Syllabus on Rehearing.

**Facts assumed by counsel — erroneous — appropriations in excess of revenue — board of equalization — levy for taxation purposes — must be within limit — must reduce appropriations within limit.**

6. It appearing on rehearing that the undisputed facts are the reverse of those which were by counsel, through error and inadvertence, assumed to be correct on the first hearing, and that in the light of such newly discovered facts the appropriations greatly exceed the revenue which can be raised by a levy within the constitutional limit of 4 mills, it is the imperative duty of the board, in levying the state taxes, to deduct from certain appropriations a sum sufficient to bring the total within the maximum limit thus fixed.

**Reductions — rule for making — branches of state government — penal institutions — insane and feeble minded — other appropriations reduced pro rata.**

7. In making such reductions from the various appropriations the following rule should be followed: In making such levy the board should provide in full only for those appropriations covering the expenses of maintaining the three co-ordinate branches of the state government, and those for the penal institutions and for the insane and feeble minded. All other appropriations, both standing and special, should be reduced on a *pro rata* basis to such sum as will bring the total appropriations within the constitutionanl 4-mill limit.

Opinion filed October 28, 1914. On Rehearing November 12, 1914.

Application for an original writ of mandamus, directed to the respondents as members of the state board of equalization, commanding such board to revise and correct its levy of state taxes so as to include in

such levy 1⅛ mills for the educational institutions, as prescribed in chapter 148, Laws 1913.

Writ granted.

*Newton, Dullam, & Young,* for relator.

*Andrew Miller,* Attorney General, *John Carmody, Alfred Zuger,* Assistant Attorneys General, for respondents.

FISK, J. Application on due notice is made to this court by a resident citizen and taxpayer for a writ commanding the respondents, as members of the state board of equalization, to correct and readjust its levy of state taxes so as to include therein 1⅛ mills for the educational institutions of the state, pursuant to the special levy for such purposes made by the legislative assembly in chapter 148, Laws 1913. Such board levied but 1 mill to meet all the special levies made by the legislature, leaving but a fraction of a mill for the educational institutions as apportioned by such board. The board attempts to justify its action in so doing upon the grounds:

1st. That the acts attempting to make such special levies are unconstitutional, and,—

2d. That such reduction was necessary in order to bring the total levy for state purposes within the constitutional limit of 4 mills as provided by § 174 of the state Constitution, which reads:

"The legislative assembly shall provide for raising revenue sufficient to defray the expenses of the state for each year, not to exceed in any one year four (4) mills on the dollar of the assessed valuation of all taxable property in the state, to be ascertained by the last assessment made for state and county purposes, and also a sufficient sum to pay the interest on the state debt."

We do not pass upon the constitutionality of such special levy statutes, for the reason that such point is not pressed by respondents' counsel, and at the oral argument was practically abandoned by them. Furthermore, all the beneficiaries under these statutes are not before the court, and it would be unfair to them to adjudicate such question in their absence. Moreover, some of these special levy statutes have been in operation for many years, and their validity has never been questioned. It is also, at least, doubtful as to the right of respondents, as members of

the state board of equalization, to raise such question at all, and especially in these proceedings.

Following the well-settled rule that courts will not inquire into the validity of a statute except when it is imperative so to do, we refrain from doing so in this case, but in passing we cannot refrain from observing that respondents' contention on this point is, in any event, apparently inconsistent with their action in levying a fraction of a mill for such purposes.

The petitioner, on the other hand, is, we think, clearly in error in his contention that the constitutional limit of 4 mills as fixed in § 174, supra, does not apply to levies for educational purposes. If such contention be sound, there is no limit to the rate of taxation except with reference to raising revenue sufficient to defray the expenses of the three co-ordinate branches of the state government, the executive, legislative, and judicial. In employing the language, "the legislative assembly shall provide for raising revenue sufficient to defray *the expenses of the state* for each year, not to exceed in any one year four (4) mills on the dollar," etc., the framers of the Constitution clearly intended to thus limit the raising of revenue for all purposes whatsoever, except that mentioned in the last clause of the section; and this is the holding of the Colorado court under a similar constitutional provision. People ex rel. Thomas v. Scott, 9 Colo. 422, 12 Pac. 608; Re Appropriations, 13 Colo. 316, 22 Pac. 464; People ex rel. State University v. State Board, 20 Colo. 220, 37 Pac. 964. It would, indeed, be strange if it was intended to limit the raising of revenue necessary for keeping the state government in operation, and yet leave a free hand as to all other purposes. Is the maintenance of the educational institutions more important than the maintenance of the state government itself? Clearly not.

Is respondents' second ground of justification, as above stated, tenable? A correct answer to this question involves a consideration of certain questions of fact as well as law. It is conceded that the actual and necessary expenses of maintaining the three branches of the state government, *viz.,* the executive, legislative, and judicial, must be taken care of in preference to all other expenses. In view of this concession, which is undoubtedly correct, and also in view of our holding as above stated, that 4 mills is the limit of taxation for all state purposes, it necessarily follows that the levy for other purposes, even though directed to be

made by specific and valid acts of the legislature, must be postponed or reduced to the extent, if any, that such specific levies would, when added to those necessary for raising the required revenue for the maintenance of the state departments, exceed the 4-mill limit. Is there any such excess to be thus dealt with?

This brings us to a consideration of the question whether in making such levy the board erroneously included items of revenue not necessary to be raised for the purpose of meeting the appropriations made by the legislative assembly and the estimated general expenses of the state as made by the state auditor. The power of levying taxes is, of course, a legislative power, to be exercised within the limits of the constitutional provision, § 175 of the state Constitution, which provides: "No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same, to which only it shall be applied."

By §§ 1531 and 1538, Rev. Codes 1905, being §§ 2141 and 2148, Comp. Laws 1913, the legislature designated the state board of equalization as the agency for levying state taxes. The latter section, among other things, provides: "In levying said tax the state board of equalization shall be limited by the amount necessary to raise for the purpose of meeting the *appropriations made* by the legislative assembly and the estimated general expenses of the state, as made by the auditor, . . . provided, that if the amount is greater than the rate prescribed in the Constitution will raise, then the state auditor shall only certify the limited rate."

It will thus be seen that the authority of the board is limited by law, in making such levy, to an amount necessary to meet past appropriations made by the legislature and the estimated general expenses of the state. Such language is, we think, too clear for debate, and that thereunder the board has no power to include in its levy items deemed necessary to meet anticipated future appropriations. It is equally clear that the words "estimated general expenses" were intended to include merely the ordinary expenses pertaining to the maintenance of the three branches of the state government, and for which the legislature has provided standing appropriations. To otherwise hold would in effect be deciding that no limitation whatever, except the constitutional limitation of 4 mills, was intended to be imposed by the legislature. If 2

mills only were required to cover all appropriations, including standing as well as special appropriations, then if the defendant's contention is sound, the board could levy the additional 2 mills for no specific purpose, or for a purpose which it might deem proper, and the legislature could thereafter appropriate the revenue raised, to any purpose, or not appropriate it at all. This would be violative of § 175 of the state Constitution above quoted.

Defining the purpose for which a tax shall be levied is the exclusive function of the legislature, not the board of equalization or the state auditor; and this function cannot be delegated; and no tax can be levied unless the purpose therefor has been first specified by the legislature.

Tested by the above rules it is clear that the board exceeded its powers. The undisputed facts disclose that the board included one item of $171,800 to meet future contemplated appropriations of an extraordinary character, also other items of a similar nature. If such items are eliminated, the 4-mill limit will not interfere with the special levy of $1\frac{1}{8}$ mills made by chapter 148, Laws 1913, for the maintenance of the state educational institutions.

We are amply supported in the above views by the supreme court of Colorado in the following cases decided under constitutional and statutory provisions very similar to those in this state: People ex rel. Thomas v. Scott, 9 Colo. 422, 12 Pac. 606; Re Appropriations, 13 Colo. 316, 22 Pac. 464; People ex rel. State University v. State Board, 20 Colo. 220, 37 Pac. 964; Nance v. Stuart, 12 Colo. App. 125, 54 Pac. 867, and cases cited; Parks v. Soldiers' & S. Home, 22 Colo. 86, 43 Pac. 542; Denver v. Adams County, 33 Colo. 1, 77 Pac. 858; See also Chicago & N. W. R. Co. v. State, 128 Wis. 553, 108 N. W. at p. 576 of opinion.

The writ will issue as prayed for by the relator.

## On Rehearing.

FISK, J. A rehearing was granted herein upon the application of the attorney general, who does not question the correctness of the above opinion upon the facts there before us, but asserts that such facts were, through mistake and inadvertence on the part of respondents' counsel and the state auditor, accepted as correct, and that the true facts dis-

close that the existing appropriations, to be met by the state levy far exceed the constitutional limit of 4 mills, and that it is therefore imperative that some of such appropriations must be entirely omitted from consideration in making the levy, or that they must be materially scaled down. Upon such rehearing, further testimony was heard, from which it conclusively appears that the facts are as now contended for by the attorney general.

The perplexing question therefore arises as to the proper method to be pursued by the state board of equalization in dealing with this situation. Has the board the power to single out or select among the various appropriations in excess of those for the expenses of the three branches of the state government, which are preferred, such appropriations as in its judgment ought to be preferred and provided for in the levy, or must it, in making the forced reduction, either give priority to those first made in point of time, or make the necessary reduction in all such appropriations by a pro-rating method?

We are clear that it cannot do the first. This is purely a legislative function, which has not been, nor can it be, delegated to the board. The power of the legislature in the premises is plenary, but it has not spoken; hence one of the latter methods of dealing with the situation must be pursued by the board. Should preference be given to those appropriations which are prior in point of time? This is the holding of the Colorado court in People ex rel. State University v. State Board, 20 Colo. 220, 37 Pac. 964, from which we quote: "While no authorities have been cited upon the question, and none have been found by the court, we think that, where excessive levies have been made, the true rule is to allow the levies precedence in the order in which they were passed, giving preference, when necessary, to levies for the purpose of meeting appropriations for the support of the executive, legislative, and judicial departments of the government as indicated in Re Appropriations, 13 Colo. 316, 22 Pac. 464." The ground for such holding is not stated, but of necessity it must be predicated upon the theory, either that such was the legislative intent, or that, after exhausting the 4-mill limit, the legislative power to make appropriations was exhausted.

Neither of these grounds appeal to us as sound. We are wholly unable to see how such intention of the legislature is in the least reflected

by the dates of the appropriations, and it is manifestly inequitable to adopt such rule, for under it appropriations of the least urgency and importance to the general welfare might be given precedence over those of the gravest urgency and importance. The other theory is, we think, likewise fallacious, for the legislature cannot definitely know that the assessed valuation of the property of the state as subsequently fixed will not afford, within the 4-mill levy, sufficient revenue to meet all of its appropriations. We think the better and sounder rule is stated by Mr. Gray in his work, Limitations of Taxing Power, § 2025. He says: "It seems to the writer that if there are taxes especially ordained in amount by the Constitution itself, they should be collected in full. As to all other taxes of equal legislative grade, there seems to be no good reason why mere priority of enactment, as distinguished from mere priority of levy, should give preference. It may be said that the legislative power to tax is exhausted when the bills which lay the taxes up to the limit are enacted. But the constitutional provisions may generally be regarded as intended to protect the taxpayers from excessive burdens, and taxpayers are not burdened until the tax is actually levied, or in some way has become a liability. Viewed in this light the legislature's control over the rate is complete until the moment taxes equal to the prescribed limitations have actually been levied. The *pro rata* method of reduction seems to be the fairest rule to apply to taxes of equal legislative credit levied at the same time, when the aggregate of the levies exceed the prescribed limitations."

Again, in § 2031 this author, in speaking of the Colorado decision above cited, says: "This decision, it will be noticed, is in part at variance with the views heretofore expressed by the writer. There can be no doubt that the levy for the general expenses of government was entitled to precedence, but inasmuch as none of these taxes had yet been actually levied so as to become burdens on or liabilities of the taxpayers, the writer believes that the *pro rata* rule should have been applied to all the special taxes, regardless of the date of the enactment. Until the levies had been actually made, each successive act might well have been regarded as repealing so much of the earlier acts as was inconsistent with it. After the levies had been made, and the taxpayer's liability had actually accrued, of course the legislative power to lay further taxes was exhausted."

In this connection we deem it proper to say that, while the appropriations for the penal institutions and the state hospital for the insane, in which institutions the inmates are confined against their will for the benefit of society, as well as that for the feeble minded, do not fall strictly within the classification of appropriations for the expenses of the three co-ordinate branches of the state government, it is clear that they are of necessity entitled to priority over all appropriations in the second class, and it is eminently proper that they should be included by the board in the first class. Beyond this, we deem it unnecessary to classify the appropriations in detail. The respondents will, we believe, experience no difficulty in following the directions herein pointed out.

For the above reasons, briefly expressed, we reach the conclusion that it is the duty of the board in making the state levy to provide in full only for those appropriations covering the expenses of maintaining the three co-ordinate branches of the state government, the penal institutions, the hospital for the insane and the feeble minded, and that all other appropriations, both standing and special, should be reduced, on a *pro rata* basis, to such sum as will bring the total appropriations within the constitutional 4-mill limit.

We assume that the respondents will, without the issuance of any writ, revise and readjust the levy so as to conform with the views herein expressed.

Goss, J., concurring. My views of this case are that our decision should be along the following lines: (1) As the power to impose the tax is a legislative one, as to which all authorities seem agreed, the basis for this tax must be found in an expense authorized by the state legislature. The rate must be determined from this expense, and cannot exceed 4 mills. The expense to be applied to the existing valuation must be determined as provided by law (§ 2148, Comp. Laws 1913), and determined from two sources. These are: (1) Specific appropriations made. And in determining what are specific appropriations, that must be regarded as specific which can be made specific; under which rule an appropriation by a mill or portion thereof is a specific appropriation. The other source is found in the words of the statute (§ 2148), "and the estimated general expense of the state as made by the auditor." This general expense of state is limited to the three arms of government,

legislative, judicial, and executive, and again by the fact that such expense must have been expense authorized by some legislative act, and which expense must be met by taxation, as a tax cannot be imposed under such circumstances except to meet a legitimate expense.

With the basis for computation of the rate thus fixed, the question confronts us, as it did the board, of what to do when, as here, the total levy upon the above basis (inclusive as it is, of appropriations for specific amounts of the mill and one-eighth tax and of the necessary expense as thus computed by the auditor), far exceeds the constitutional taxation limit of 4 mills for such purposes, and beyond which the board cannot go.

Before proceeding further, it is well to here state that we are reviewing no act of a judicial tribunal, and therefore are not reviewing a judicial discretion. Strictly speaking, this board of equalization has no such discretion. It and the state auditor act ministerially in carrying out the mandate of the legislature, which is the only body having discretion in taxation purposes as to state taxes, and whose discretion is manifested and must be found in the appropriations authorized, and not elsewhere. The court then has authority to review the ministerial acts of this board, even though such acts may involve a certain amount or kind of judgment as to the method of following the law, and we must determine whether the method prescribed by the legislature has been followed. The question then resolves to whether this board has in so acting pursued the course prescribed by law in meeting the exigencies, passed up to it by the legislature, of determining either what items, or what parts of the total levy in the aggregate exceeding 4 mills called for by the appropriations, shall be provided for by taxation.

In casting about to find some rule to apply to the situation in hand, it is first necessary to determine whether any portion of the total levy to be made is of funds that are by law recognized as preferred over others. If so, the legislature must be deemed to have known such fact, and had it in mind in its appropriations of the total proceeds when they shall be raised. And here we find a recognized general division into preferred and nonpreferred items. Such amounts of this total levy as is necessary to pay what is strictly state expense, that is, disbursements necessary for maintaining and keeping in running the co-ordinate branches of our government, namely, legislative, executive, and judicial,

must be first met, and as such constitute a preferred class. This results from the fact that it is inconceivable, and contrary to all intents of the constitution as well, that for a moment the state government should cease. As the government is made up of its co-ordinate branches, neither one of these is to be considered singly or to be given preference over the other. Inherent in the taxing power, then, is the necessity for the exercise of the full powers of state government to levy, declare, and enforce the tax; and that portion of the total 4-mill levy necessary to run the state government as such is preferred over other agencies of government declared by the legislature or the Constitution to be necessary, but, from the nature of things, but of secondary importance. Included in and as a part of necessary state expenses as classified and defined must be such amounts as are necessary to care for the penal institutions, as it is necessary that they exist and be provided for to protect organized society, the state. For identical reasons the state insane asylum must be provided as state expense, strictly speaking. And the same is true as to the institution for the feeble minded, which institution, by the constitutional provision subdiv. 8, § 215, and the 6th constitutional Amendment, must be regarded as of the same class. But farther we do not care to go in classifying state institutions along this line.

Thus the general fund is first divided into the preferred and nonpreferred, according to the foregoing classification. The state board will determine the portion of the total 4 mills that, under the rule heretofore announced, should be necessary to care for the strictly state expense, and levy that amount without diminution or deduction whatever.

As to the balance over and above state expenses, in the absence of some legislative provision that a particular levy shall in all events have priority over others of its classification, I can see no reason why any specific appropriation, whether its levy be called for in specific amounts or by a mill apportionment, is to be preferred over any other. The fact that each is devoted to some object declared public and necessary by the legislature does not of itself say that one object so declared was of more importance than another to the legislative mind. Hence, there being no further apparent method of division or classification, one of two things must be done: (1) Either the appropriation given priority

28 N. D.—38.

according to time of enactment, or else (2) all appropriations be deemed equally meritorious and pro rated until in the aggregate they do not exceed, when combined with the necessary state expense as classified, the constitutional limit of levy of 4 mills. As to the first, it would seem as though we were without authority to determine an intent in the legislature that priority should occur according to priority of time of enactment. As is said in Gray on Limitation of Taxing Power, § 2031, why not regard each successive appropriation made "as repealing so much of the earlier acts as was inconsistent with it?" and thus validate and recognize all appropriations on a *pro rata* basis. And again, as mentioned by that author (§§ 2025, 2026), the appropriations are primarily to disburse moneys on the assumption that the amounts shall be legally raised, and to that extent the question of levy by taxation is not involved in the appropriation bills, and hence not within the intent of the legislature, thereby necessarily rendering it impossible to say that one appropriation of moneys should have precedence over another, there really being no legislative intent to be arrived at on the question. That authority says (§ 2026): "The *pro rata* method of reduction seems to be the fairest rule to apply to taxes of equal legislative grade levied at the same time, where the aggregate of the levies exceeds the prescribed limitation." The term, "levying it at the same time," has reference to the act of this board in laying the tax to raise the appropriations made. Hence, unless there be some specific contrary enactment, all said appropriations must be scaled down *pro rata*. And here we come to chap. 146, Comp. Laws 1913, providing for a levy of $1\frac{1}{8}$ mills, to be computed by the county auditor, who shall forward the proceeds to the state treasurer, who in turn shall apportion the fund according to certain percentages and then disburse it according to the section of the act appropriating it. Does this act evidence a legislative intent to confer priority upon this appropriation over other appropriations because of the fact, peculiar to this bill alone, that it is both a legislative levy and an appropriation, and has attempted to direct in a special manner how the tax shall be spread and subsequently collected and distributed? It is noticeable that the act purports to be a legislative levy, but I do not believe the bill should be construed as an attempt to levy this tax without the instrumentality of the state equalization board, as would perhaps put the levy into a preferred class. The bill is not to be

construed as a direction to the county auditor to levy 1⅛ mills in any event and independent of the action of the state board of equalization. Every standing appropriation authorizes the constituted taxing authorities to meet it, and it is met by the action of the board authorized to levy. No opinion is expressed on the constitutionality of this particular statute. Whether it sufficiently appears from it as an entirety, when considered with the first bill of similar kind and phraseology as illustrated by chap. 156, Laws of 1901, that this bill (chap. 148, Sess. Laws 1913) when enacted was with the idea that § 174 of our state Constitution, limiting the rate to 4 mills on the dollar of taxation had application only to what we herein classify as technically "the expense of the state," and did not include all other expenses, such as taxation for educational institutions, and hence leaving them unlimited, it is unnecessary to decide. If so, when this bill was passed under said belief that, and with the intent that, it should be an appropriation in excess of the constitutional limit, the bill would be clearly unconstitutional, as the constitutional limit applies to all appropriations for whatever purpose except the levying of "a sufficient sum to pay the interest on the state debt." It is assumed, therefore, without deciding the question, that chap. 148, Sess. Laws 1913, is valid as an appropriation of moneys, and not unconstitutional; and that the tax to be levied thereunder, although specifically directed to be calculated by the auditor, is presumed to be a levy imposed in the usual way and subject to whatever authority the state board of equalization may have over all appropriations of that class. It may be noted that the 2d section of the bill, relative to the computation by the county auditor, loses its apparent significance when we remember that said official must in any event compute the tax. And the same is true as to its apportionment, contained in the 3d provision of the act, it being the duty of the state treasurer upon collection of the tax to credit it to the fund for which it is levied, and to disburse it according to the levy. So §§ 3 and 4 of the act add nothing to it. The same procedure would be carried out even though §§ 1, 2, and 3 were omitted altogether from the bill. The 1st section, although purporting to be a direct legislative levy, is no more direct and no different a levy from any other, every levy being a legislative act; as is said in Vallelly v. Park Comrs. 16 N. D. 25, 15 L.R.A. (N.S.) 61, 111 N. W. 615, at page 31 of the state report. "It is con-

ceded, and could not be reasonably doubted, that the power to levy taxes is a legislative power." And so it matters not that the bill provides for a levy and an appropriation thereafter, as the same thing would be accomplished by the usual appropriation bill, with the results the same in either instance. No sufficient reason appears for holding this appropriation bill to be a preferred one. Such being the case, this appropriation should be pro rated equally with all others of its class; and the fact that many of the appropriations are in specific amounts, while this is yet to be calculated on a mill basis, makes no difference. All should be pro rated on the principle that expenses of an equal class and having no preference one over the other should be equally cut in making the state's disbursements not overdraw the state pocketbook.

Among the items to pay for which provision must be made is an item of $6,000 for printing constitutional amendments for the election just passed. My understanding of this item is that § 2296, Rev. Codes 1905 (§ 3190, Comp. Laws 1913), furnishes sufficient basis for its inclusion in the auditor's estimate of strictly state expenses, and as such it is a preferred claim. We are not called upon to examine the various other appropriations made to determine the constitutionality of each of them, nor are we asked to do so.

What has here been said has been upon the conceded proof now before the court, that after all questionable items of appropriation are deducted there will not be remaining to exceed the proceeds of 1 mill upon the assessed valuation, so that when it is determined that the educational institutions must pro rate, it is also thereby decided that they can receive no more in the aggregate than 1 mill of the 4 mills levied. This in fact passes upon all questions necessarily involved. In my opinion the board should determine the amount of the preferred levy of state expense proper, and levy a rate sufficient to meet the same in full; that it should next compute the total valid appropriations made for the ensuing year, including the appropriation by the $1\frac{1}{8}$ mill tax for the educational institutions, and then pro rate all said appropriations and rate equally, so that a levy for each and all the items of appropriations shall bear the same ratio to the total fund possible to be raised over state expenses and within the 4 mill limit.

PER CURIAM. Immediately after the filing of the above opinion

respondents' counsel made application to this court requesting that it add to or incorporate into its opinion or file a supplementary opinion herein designating the particular class to which each separate appropriation involved properly belongs. After such request was made a hearing was had by counsel and after duly considering the matter and deeming such classification by this court unnecessary in order to enable the respondents to comply with the rule announced by the court for their guidance, such request is hereby denied.