JAMES C. DAVIS, Agent of the President under the Transportation Act of 1920, Appellant, v. COUNTY OF PIERCE, a Municipal Corporation, and E. A. Reveling as County Treasurer of Pierce County, Respondents.

(191 N. W. 618.)

**Schools and school districts — laws limiting legal limit for the assessment of taxes held not applicable to county tuition fund for support of public schools.**

Chapter 214 of the Session Laws of 1919, as amended by chapter 61 of the Laws of the Special Session of 1919, is construed and held to have no application as a tax limitation statute to taxes levied under § 1224 of Comp. Laws 1913, as amended by chapter 216 of the Laws of 1919 and chapter 66 of the Laws of the Special Session of 1919, for the county tuition fund for the support of the public schools.

Opinion filed December 29, 1922.

Schools and School Districts, 35 Cyc. p. 1003, n. 15.

Appeal from the District Court of Pierce County, *Burr, J.*
Affirmed.

*Murphy & Toner,* for appellant.

The general proposition here has already been settled in favor of the plaintiff under what we claim to be identical conditions and identical statute. Laws 1915, chap. 254; Ry. Co. v. Duncan (N. D.) 176 N. W. 992.

The contemporary and subsequent action of the legislature in reference to the subject-matter has been accepted as controlling evidence of the intention of a particular act. Sutherland, Stat. Constr. § 476; Bigelow v. Forrest, 9 Wall. 339, 19 L. ed. 696.

That the legislature has the authority by proper enactment to refund, rebate, wipe out or invalidate taxes already levied, is clear. Demorville v. County (Tenn.) 10 S. W. 353; Henry v. Alford, 168 U. S. 651; Auditor Gen. v. O'Connor (Mich.) 47 N. W. 443; Files v. Ry. Co. (Ark.) 3 S. W. 817.

"Where the later or revising statute clearly covers the whole subject-matter of antecedent acts, and it plainly appears to have been the intention of the legislature to give expression in it to the whole law on the subject, the latter is held to be repealed by necessary implication." Sutherland, Stat. Constr. subd. 3, § 247.

"A law authorizing counties to issue bonds to the amount of two per cent of the assessed valuation for various purposes, including the construction and repair of roads and bridge was held to be repealed as to the latter purpose by an act prohibiting the issue of such bonds to an amount in excess of one per cent." Murphy v. Comrs. 75 N. W. 951.

"A law authorizing counties to levy a tax for the support of the poor was held to be repealed by a subsequent law authorizing counties to levy not exceeding three mills on the dollar for county purposes the support of the poor being a county purpose." Oregon Short Line v. Standvig (Or.) 37 Pac. 687.

There is a presumption where acts passed at the same session of the legislature are alleged to conflict, especially where neither has a repealing clause that they were both intended to stand, and will be harmonized if possible; but if they relate to the same subject and are clearly repug-

nant to each other as they are no such presumption can prevail. White v. Meadville, 177 Pa. 643, 34 L.R.A. 567.

If there is irreconcilable conflict the latter in position prevails. Ex parte Thomas, 21 So. 369; Hand v. Stapleton, 33 So. 689; Van Horn v. State, 64 N. W. 365; Omaha, etc. v. Krogsoow, 66 N. W. 658.

"A statute authorizing the sheriff to bind the county for the support of prisoners was held to be repealed by a law which provided that no county officer, except the board of county commissioners, should contract for the payment or expenditure of any county moneys for any purpose whatever." State v. County Comrs. 37 Pac. 486; Starbird v. Brown, 84 Me. 238; Pool v. Brown (Mo.) 11 S. E. 743; Pleasant Hill v. Dasher (Mo.) 25 S. W. 566; State v. Butcher (Tenn.) 28 S. W. 296; Felts v. R. Co. (Pa.) 33 Atl. 97.

*Harold B. Nelson* (*C. C. Converse,* on oral argument), for respondent.

"The repeal of statutes by implication is not favored, and where there are two laws upon the same subject they must be so construed as to maintain both, if it can be done without destroying the evident intent and meaning of the later act." Traber v. Railroad Commission (Cal.) 191 Pac. 366.

"Where two statutes dealing with the same subject-matter are in conflict, so that both cannot be operative, the later act will be regarded as a substitute for the former and will operate as a repeal, although without the repealing clause." State ex rel. v. Public Serv. Commission (Mo.) 204 S. W. 395.

"Though repeals by implication are not favored, when two conflicting statutes prescribe different and inconsistent rules of action about the same thing, the later must prevail." Hurt v. Yazoo etc. Co. (Tenn.) 205 S. W. 437.

"Two acts that are passed at the same session of the legislature are not to be construed as inconsistent, if it is possible to construe them otherwise; but where it is impossible to give effect to both acts the latest in point of time will prevail." People v. Illinois C. R. Co. (Ill.) 129 N. E. 66; Buttorff v. City (Pa.) 110 Atl. 728; State v. Wetz (N. D.) 168 N. W. 825.

"A special act and the general act relating to the same subject being necessarily inconsistent, the special act is usually regarded as an excep-

.tion to the former and prevails, though it was enacted before the general act, unless the provisions of the general act necessarily exclude such a construction." Kornegay v. City, 180 N. C. 441, 105 S. E. 187.

"It is a ruling of statutory interpretation that a general act is not to be construed as repealing a particular one." Kreutner v. State (Ala.) 80 So. 125; Koehn v. Public Serv. Commission, 176 N. Y. Supp. 147; . Vertress v. State Bd. (Tenn.) 214 S. W. 737; People v. Chicago, etc. R. Co. (Ill.) 129 N. E. 168; Holle v. Drudge (Ind.) 129 N. E. 229; Van Hess v. Board etc. (Ind.) 129 N. E. 305; State v. Prairie etc. County (Okla.) 167 Pac. 756; Solomon v. Denver, 12 Colo. App. 179, 55 Pac. 199; Oneida County v. Evans, 25 Idaho, 456, 138 Pac. 337; Calpin v. Chicago, 249 Ill. 554, 94 N. E. 961; Princeton Coal Min. Co. v. Lawrence, 176 Ind. 469, 95 N. E. 423; Cleveland etc. Ry. Co. v. Blend (Ind.) 105 N. E. 483; Com. v. Huntely, 156 Mass. 236, 30 N. E. 1127, 15 L.R.A. 869; Paul v. Carter, 153 N. C. 25, 68 S. E. 905, 36 L.R.A.(N.S.) 1209; Follensby v. Wilbur, 14 Wash. 242, 44 Pac. 262.

Manifestly the right of taxation exists in the legislature and can, by it, be delegated as in its wisdom seems proper. 37 Cyc. 966.

The auditor is merely charging a sum, already fixed and ascertained, against the property, the value of which has already been determined, in the manner provided by law, and in which the taxpayer has had full opportunity to be heard. Gray v. Peoria Board of School Inspectors, 82 N. E. 95.

BIRDZELL, Ch. J.   This is an appeal from a judgment in favor of the defendant in an action to recover certain taxes paid under protest. The facts were stipulated and, so far as material, are as follows:   The plaintiff at the time of the beginning of the action was the agent of the President in charge of railroads while under Federal control.   While under such control taxes were assessed and levied against the property of the Great Northern Railway Company in the county of Pierce in the year 1919 amounting to $51,858.78, which taxes were regularly paid .the 29th of February 1920, by the United States Railroad Administration.   $931.97 of this amount was paid under protest and a notice served upon the county treasurer at the time to the effect that this amount represented excess taxes assessed and levied for the county tui-

tion fund for the support of the public schools. It was claimed that the tax was 30 mills in excess of the legal limit of levy for the year 1919 as fixed by certain legislative enactments hereinafter referred to. The tax objected to was levied at the rate of 1 mill on the dollar of the assessed valuation.

A brief statement of the legislation authorizing and limiting the mill tax for the tuition fund may conduce to a more ready understanding of the legal question presented upon this appeal. Section 1224 of the Compiled Laws for 1913 requires the county auditor to extend a tax of 2 mills on the dollar on taxable property in the county to be apportioned among the school districts. In 1915 the legislature passed an act (chapter 254 of the Session Laws for 1915) limiting levies, which this court held, in Great Northern R. Co. v. Duncan, 42 N. D. 346, 176 N. W. 992, to be applicable to the county tuition levy so as to limit the amount that could be raised under § 1224, Compiled Laws of 1913 to the percentage of increase authorized by that chapter, which might be less than the 2 mills permitted by § 1224. In 1919, in the regular session of the legislature, two acts were passed, bearing upon the tax in question. They were both approved on the same day, March 6, 1919. One of them, chapter 214, Session Laws of 1919, reads in part:

"Sec. 1. For the year 1919 and 1920, the total annual amount of the taxes levied for any purpose, except special levies for local improvements and for the maintenance of sinking funds in any county or political subdivision thereof shall not exceed by more than 10 per cent the amount that would be produced by the levy of the maximum rate provided by law upon the assessed valuation of 1919; provided, that for road or school purposes the amount levied may be twenty per cent for 1919 and forty per cent for 1920, respectively, upon the basis of the assessed valuation of 1918."

"Sec. 3. In any case wherein any duty or power is imposed or conferred by law upon any official in any county or political subdivision thereof and such duty or power is contingent upon the assessed valuation of the taxable property in such county or political subdivision, prior to July first, 1921, such duty or power shall rest upon and be conditioned by the assessed valuation of 1918, except as provided in section one hereof."

This act was passed with an emergency clause, declaring it to be in

49 N. D.—26.

effect from the date of its approval. The other act is chapter 216 of the Session Laws of 1919. It amends § 1224 of the Compiled Laws of 1913 by reducing the mill tax for the tuition fund form 2 mills to 1 mill on the dollar of taxable property. This act was approved on the same day as chapter 214, but contained no emergency clause.

At the special session of the legislature, held November 25, 1919 to December 11, 1919, another act was passed, amending chapter 214 of Session Laws of 1919. The amendatory act did not differ in form or principle from the act amended; it merely extended the limitations to cities, towns, and villages, and made them apply to the taxes of the then current year of 1919. Special Session Laws 1919, chap. 61. This act carried an emergency clause, putting it into effect from the date of its approval.

On the day following the approval of this act another act was approved further amending § 1224 of the Compiled Laws of 1913, as previously amended by chapter 216 of the Session Laws for 1919, by reducing the mill tax for the tuition fund from 1 mill to $\frac{1}{2}$ mill on the dollar. This act contained no emergency clause.

The plaintiff and appellant contends that the limitation contained in chapter 214 of the Session Laws of 1919, as amended by chapter 61 of the laws of the Special Session of 1919, is applicable to the levy for the county tuition fund authorized by chapter 216 of the Laws of 1919. The latter law fixes the levy at 1 mill on the dollar of valuation, and the specific contention is that chapter 214 has the effect of limiting or reducing this tax to the point where it cannot exceed by more than 20 per cent in 1919 the maximum determined according to the assessed valuation of 1918.

The principal arguments in support of this contention, as we understand them, are two in number. First, that chapter 214 of the laws of 1919, being devoted exclusively to the subject of limiting levies, is general and negative in its terms, and consequently is applicable to all levies of whatsoever kind or character; and that the intention to make it broad enough to apply to every levy is further substantiated by the amendatory act of the special session, extending it to cities and villages, and specifically requiring its limits to be observed in extending the taxes for the then current year and at a time when the tax lists had probably been partially made up. Second, that § 3 of the act, hereinbefore

quoted, is directed specifically to the officer whose duty it is to extend the mill tax, and that consequently, by the express language of § 3, the tax cannot be imposed for a greater amount than permitted by § 1.

We are of the opinion that neither of these arguments is tenable, and further, that the limitation upon the levy for the tuition fund during 1919 was only that expressed in chapter 216 of the Session Laws, wherein the tax was reduced from 2 mills, originally provided in § 1224, to 1 mill.

The reasons for our conclusion may be briefly stated. Section 1 of chapter 214 of the Session Laws of 1919 (and likewise the amendatory act, § 1, chapter 61 of the Laws of the Special Session) contains no enumeration of tax levying officers which would include the county auditor who extends the mill tax, as was the case with § 1 of the original act of this character passed in 1915, chapter 254, Session Laws of 1915, and which was construed by this court in Great Northern R. Co. v. Duncan, supra. This act simply places a limitation on the total amount of taxes levied "for any purpose" during the years 1919 and 1920, and, as we construe it, it can have no application to a tax levied by the legislature itself at a certain rate in mills, in the absence of a clear expression to that effect. The only way this limitation can be made effective is to consider the school district or other taxing district as the unit for the purpose of applying the statute. That is, the limitation does not apply to the aggregate of school taxes in a county, but applies to the aggregate of such taxes in a district. To attempt to apply it to the aggregate of school taxes in a county would, of course, result in the absurdity of making the authority of a particular school board to levy taxes contingent upon what is done by all the other boards. Hence, considering the statute as limiting the taxes that might be levied in a particular district taken as a unit and applying the appellant's construction of § 1 as applicable to the mill levy, it will be seen that it would be incumbent upon the auditor to compute for each district the school taxes levied locally and add thereto the mill tax, for obviously both levies are for school purposes. If the aggregate should exceed the limitation in § 1, it would then be his duty, under appellant's contention, to reduce the aggregate. In making the reduction, there is no legislative guide for the auditor to follow in determining whether or not he should reduce the tax levied locally or the mill tax, or whether he should

reduce both pro rata. Obviously, no reduction of either one is authorized, except where the "total annual amount" levied for school purposes should exceed the maximum, and it might be that on account of a low levy by a local school board the aggregate of the school tax in the district, including the full mill levy permitted, would be within the limitation prescribed.

The gist of the whole matter is that the limitation of § 1 has regard for the *purpose*—in fact that term "school purposes" is used—and it has no application by its terms to a stated tax, which ordinarily affords but a fractional part of the taxes levied for the general purpose of maintaining schools. Hence, to construe this section as applicable to this one tax would limit or reduce taxes levied for school purposes in some instances even though the aggregate amount levied against the property in a particular district would be less than the basic levy of 1918. This contravenes the obvious intention expressed in chapter 214. It also subverts the evident policy of § 1224 as amended—a policy of long standing—of levying a *uniform* tax for the support of the public schools, to be *apportioned* among them as a tuition fund.

We do not regard § 3 as being addressed specifically to the county auditor in such a way as to limit his power to extend the mill tax, for the reason that it is apparent that his duty or power is neither contingent upon nor conditioned by the assessed valuation. He is required to spread the tax on all taxable property in the county regardless of the aggregate assessed valuation. This power cannot be said to be contingent upon assessed valuation when it must be exercised towards the entire property regardless of amount. This language would seem to apply to a tax that is authorized only when the assessed valuation reaches a certain amount. See § 1867, Compiled Laws of 1913.

Moreover, we are of the opinion that the legislature, by the passage of two acts, each successively cutting in half the mill tax (chapter 216, Session Laws of 1919 and chapter 66 of the Special Session Laws of 1919), which entered into their concurrent consideration of the tax limiting question, showed, unmistakably, an intention to continue the policy of extending the mill tax at the rate prescribed, rather than subject it to such contingencies as would result from the attempted application of the levy limitations prescribed by chapter 214 and its amend-

ment.   It follows from what has been said that the judgment is right.
It is affirmed.

ROBINSON, GRACE, BRONSON, and CHRISTIANSON, JJ., concur.