**E. N. DORNACKER, Mayville, North Dakota, for himself and others similarly situated, Plaintiff,**

v.

**Mildred OLSON, as Traill County Auditor, Defendant.**

**Civ. No. 9274.**

Supreme Court of North Dakota.

Dec. 31, 1976.

William J. Brudvik, Mayville, for plaintiff.

Dewel E. Viker, Jr., State's Atty., Hillsboro, and Gerald W. Vande Walle, Chief Deputy Atty. Gen., Bismarck, for defendant; argued by Gerald W. Vande Walle, Bismarck.

PEDERSON, Justice.

This case involves legal questions certified to this Court by the district court of Traill County, pursuant to Chapter 32–24, North Dakota Century Code. Sufficient facts were stipulated to support the questions, and from the implication in the order by the district court we assume that the stipulation was adopted as a finding of fact. The questions are neither frivolous nor interlocutory in nature. We agree with the district court that the questions are of sufficient importance to determine the issues in the case. See § 32–24–02, NDCC, and *In re Garrison Diversion Conservancy District*, 144 N.W.2d 82 (N.D.1966), and cases cited therein.

The questions are:

"1. Is the 21 Mill Levy for Schools pursuant to NDCC 57–15–24 a source of revenue for State Expenditures?" (District Court's answer—No.)

"2. In light of the limitations imposed by Article XI, Section 174 of the North Dakota Constitution on the collection of ad valorem property taxes for the expenses of the State, is the 21 Mill Levy for Schools an unconstitutional tax?" (District Court's answer—No.)

Section 57–15–24, NDCC, provides:

"The county auditor, at the time the annual levy of taxes is made, shall levy a tax of twenty-one mills on the dollar on all taxable property in the county to be placed in the county equalization fund for apportionment as provided by law except that the county auditor of any county which, according to the certificate of the tax commissioner, has on a county-wide average assessed its taxable property at a percentage of market value that is either less or more than the state-wide average percentage of market value at which all taxable property has been assessed shall convert the amount certified to him by the superintendent of public instruction to mills and make such levy upon all taxable property in the county in lieu of such twenty-one mill levy specified by this section. The levy provided for in this section shall be over and above any tax levy limitations provided by law."

The parties stipulated the following facts:

"I.

"Plaintiff, Eldred N. Dornacker, is a resident of Traill County, North Dakota, owning real property in said County and State upon which he pays and has paid for many years, taxes, including the so-called '21 mill levy for Schools' pursuant to North Dakota Century Code 57–15–24.

"II.

"Defendant is the duly elected, qualified and acting Auditor of Traill County.

"III.

"Pursuant to Chapter 57–13 et seq of the North Dakota Century Code, the State Board of Equalization comprising the Governor, State Treasurer, State Auditor, Commissioner of Agriculture and State Tax Commissioner meets annually on the first Tuesday in August and equalizes the assessments of similar taxable property throughout the state 'so that all assessments of similar taxable property shall be uniform and equal throughout the state . . .'

"IV.

"Following said meeting the State Tax Commissioner certifies to the Superintendent of Instruction the county-wide average percentage of market value at which all taxable property in each county has been assessed, and the State-wide average percentage of market value at which all taxable property in the state has been assessed for equalization purposes. (NDCC 15–40.1–04)

"V.

"The Superintendent of Public Instruction then determines the amounts of grants-in-aid to which each county is entitled for educational purposes. The Superintendent of Public Instruction then certifies such amounts to the County Auditor.

"VI.

"The County Auditor pursuant to Chapter 57–15–24 of the North Dakota Century Code levies, annually, a tax of 21 Mills on the dollar on the taxable property in the County to be placed in the County Equalization Fund for Schools. The aforesaid 21 Mill Levy will vary in those Counties where the county-wide average of assessed valuation of taxable property is greater or lower than the state-wide average percentage of market value.

VII.

"The 21 Mill Levy is a mandatory tax and is combined with State appropriated funds in the County Equalization Fund

for purposes of determining the State's per pupil grant-in-aid payments to which each County is entitled."

Because the questions certified to us are interrelated, we will consider them simultaneously. We will first examine the historical background and our previous interpretations.

In the very first session of the Dakota Territorial Legislative Assembly in Yankton in 1862, a comprehensive Act for the regulation and support of the common schools was enacted. No territorial controlled fund was established but all expenses of maintaining the schools was made a responsibility of the counties or the school districts. (Chapter 81, General Laws of the Territory of Dakota, 1862.)

The Congress of the United States, in providing for the division of Dakota Territory into two states and enabling the admission of North Dakota and several other states into the Union (Chapter 180, 25 United States Statutes at Large 676, Approved February 22, 1889), provided in part: "That provision shall be made for the establishment and maintenance of systems of public schools, which shall be open to all the children of said States, and free from sectarian control." [See *Jones v. Brightwood Independent School Dist. No. 1,* 63 N.D. 275, 247 N.W. 884, 886 (1933).]

The Constitution of the State of North Dakota, adopted by the First Constitutional Convention on August 17, 1889, and by the voters on October 1, 1889, in § 147, provided that:

"A high degree of intelligence, patriotism, integrity and morality on the part of every voter in a government by the people being necessary in order to insure the continuance of that government and the prosperity and happiness of the people, *the legislative assembly shall make provision for the establishment and maintenance of a system of public schools* which shall be open to all children of the state of North Dakota and free from sectarian control. This legislative requirement shall be irrevocable without the consent

of the United States and the people of North Dakota." [Emphasis added.]

The original Constitution provided, also, in § 148, that: *"The legislative assembly shall provide* at their first session after the adoption of this constitution, *for a uniform system of free public schools* throughout the State; \* \* \*."* [Emphasis added.] Thereafter, the First Legislative Assembly did provide for a uniform system of free public schools through a system of school districts, financed by a local ad valorem property tax levy of not exceeding 30 mills. (Sections 101 and 102, Chapter 62, Laws of 1890.)

From 1890 to this date, we find that the statutes governing the financing of elementary and secondary schools have been in a state of nearly constant revision, but we find that in no instance has local financing by either school district or county been totally eliminated.

If we were to conclude that the costs of the public school system are "an expense of the State," then Section 174 of the North Dakota Constitution would apply:

"The legislative assembly shall provide for raising revenue sufficient to defray *the expenses of the state* for each year, not to exceed in any one year four (4) mills on the dollar of the assessed valuation of all taxable property in the state, to be ascertained by the last assessment made for state and county purposes, and also a sufficient sum to pay the interest on the state debt." [Emphasis added.]

In *State v. Hanna,* 28 N.D. 583, 149 N.W. 573, 574 (1914), this court, referring to Section 174 of the Constitution, said: " \* \* \* the framers of the Constitution clearly intended to thus limit the raising of revenue for *all purposes whatsoever* except that mentioned in the last clause of the section." [Emphasis added.] Subsequently, we said in *State v. Langer,* 68 N.D. 167, 277 N.W. 504, 511 (1938), that

"Section 174 of the Constitution has no application to a levy of taxes made pursuant to law enacted by the legislative assembly for the purpose of providing funds for the payment of the principal of state bonds."

Although *Hanna, supra,* and *Langer, supra,* may first appear to be diametrical opposites, they can be distinguished in that, in *Langer,* the levy which exceeded four mills was made in pursuance of another specific constitutional provision, Section 182 of the Constitution, as amended, authorizing the State to issue or guarantee bonds. The Court further explained that:

"The term 'expenses of the state' as employed in section 174 of the Constitution has reference to the general operating expenses of the state government for the fiscal year and was not intended to include revenues raised for the payment of the principal of a debt or bond authorized under section 182 of the Constitution." *Langer, supra,* 277 N.W. at 512.

See also, *Stinson v. Thorson,* 34 N.D. 372, 158 N.W. 351 (1916).

In *State v. Lewis,* 18 N.D. 125, 119 N.W. 1037, 1040 (1909), which involved the state institution for the feeble-minded at Grafton, and where it was contended that, because of Section 174 of the Constitution, the counties could not be required to aid the State in maintaining the institution or its indigent inmates, this Court said:

"The whole fallacy of appellant's contention upon this point lies in the unwarranted assumption that, because this institution is owned and controlled by the state, its maintenance and the maintenance of the inmates thereof are necessarily a state charge, and that the Legislature has no power to require the respective counties to maintain their indigent inmates or to aid the state in maintaining them. As before stated, the Legislature has the undoubted power to require the counties to pay all or any portion of the expense of maintaining such inmates."

*State ex rel. Walker v. Link,* 232 N.W.2d 823 (N.D.1975), does not conflict with *State v. Lewis, supra.* See also, *Craig v. Board of Equalization of Douglas County,* 183 Neb. 779, 164 N.W.2d 445 (1969).

Several years after *State v. Lewis, supra,* the Court had before it a challenge to the

authority of the State in a case involving a law which required the counties to send to the state treasurer ten cents per child for a teacher insurance and retirement fund. Although the application of Section 174 of the Constitution does not appear to have been raised, it is interesting to note that the court said:

"It is very clear, from a perusal of the whole act, that it was not local in its nature, *nor was education deemed to be local in its nature, but an affair and concern of the whole state.* It is also clear that in maintaining the schools and in levying the taxes therefor the *counties and localities are merely acting as agencies of the sovereign state. * * * The statute, in short, is an act of the Legislature, and not of the locality. It is an exercise of the state taxing power."* [Emphasis added.] *State v. Hauge,* 37 N.D. 583, 164 N.W. 289, 291, L.R.A.1918A, 522 (1917).

The very next year (1918) the Court had a case in which an issue was the application of Section 174 of the Constitution, but not involving education, and the court said: "Again, we are prone to reiterate the thought that a construction of the Constitution which would compel the accomplishing of legitimate aims by indirection should be avoided, * * *." *State v. Wetz,* 40 N.D. 299, 168 N.W. 835, 843 (1918).

We think it is of concern to note that this Court has called a mandatory levy for school purposes " * * * a tax levied by the Legislature itself * * *." *Davis v. Pierce County,* 49 N.D. 397, 191 N.W. 618, 619 (1922). The case did not involve Section 174 of the Constitution.

Possibly the most significant case called to our attention on this matter, but which also did not involve Section 174 of the Constitution, is that of *Todd v. Board of Education,* 54 N.D. 235, 209 N.W. 369, 371 (1926), where the Court said:

"Const. §§ 147 and 148, requires the establishment and maintenance by the state of a uniform system of free public schools, but this requirement is satisfied by provision for the creation of school districts and for a uniform system of schools in those districts."

▮ Then, in a tuition dispute case, *State v. Alquist,* 59 N.D. 762, 231 N.W. 952, · 954 (1930), the Court said that: "The school system is the school system of the state— not of an organized administrative unit— and the state in fostering this system may, and in certain respects does, require such units to furnish and support the schools, sometimes with state aid under special conditions."

In holding that the taxing power of the Legislature is without limit, except such as may be prescribed by the Constitution, the Court said that "if a contested enactment is not prohibited either by the letter or the spirit of the Constitution, it is authorized." *Aubol v. Engeseth,* 66 N.D. 63, 262 N.W. 338, 340 (1935).

From the cited cases we can readily conclude that the public school system is the system of the State and that it is within the authority of the Legislature to provide for the maintenance of that system through a State or legislative levy of taxes or through a mandatory local levy.

It appears to be Dornacker's principal argument that if the school system is the school system of the State, then the costs of maintaining it are "an expense of the State" within the contemplation of Section 174 of the North Dakota Constitution. *State v. Alquist, supra,* held that the school system is the school system of the State and that local taxing units can be required to support that system. Dornacker says that the State cannot do indirectly what it is prohibited from doing directly. (See also, *State v. Wetz, supra.*)

▮ Counties in this State are creatures of the Constitution itself [see §§ 130, 166–173, 175, North Dakota Constitution, and *Hart v. Bye,* 76 N.W.2d 139 (N.D.1956)], and when taxes are applied to a State purpose, that includes the counties [*City of Bismarck v. Kleinschmidt,* 145 N.W.2d 333, 336 (N.D. 1966)]. In *Divide County v. Baird,* 55 N.D. 45, 212 N.W. 236, 243 (1927), this Court said that the county " * * * may 'speak and

act only in the manner and on the matters prescribed by the Legislature in statutes enacted pursuant to constitutional authority.' *McHenry County v. Northern Trust Co.*, 51 N.D. 646, 662, 200 N.W. 888, 893," a 1924 case.

" \* \* \* the county treasurer was and is the tax collector for both the school district and the county. It was his duty to collect all taxes due from the taxpayers of the county and to distribute the moneys received from the various taxpayers, respectively, to the state, county, and the subordinate political subdivisions of the county." *Rosedale School Dist. No. 5 v. Towner County*, 56 N.D. 41, 216 N.W. 212, 217 (1927).

■ In the case of *United Accounts, Incorporated v. Dachtler*, 100 N.W.2d 93 (N.D. 1959), we said that a county is an agency of the State. It is not suggested that the establishment (in the Constitution) of the counties as agencies of the State, or the establishment of the school districts (by the Legislature) were mere acts of subterfuge to avoid the consequences of the limitation imposed by Section 174 of the Constitution. Dornacker says that when compared to the other statutory provisions for the levy of ad valorem property taxes, State and local, the 21-mill levy for schools " \* \* \* occupies a unique position." He acknowledges that Section 148 of the Constitution commands that the Legislature finance education. He acknowledges that the Legislature can command the levy of a tax by the county. He may be correct in stating that, at the present time, "the 21 mill levy is the only tax which is not based by law upon an itemized budget, upon local voter approval, nor by limiting words such as 'not to exceed,' etc." However, the very first school legislation in this State (Chapter 62, Section 102, S.L.1890) provided:

"The county auditor of each county shall, at the time of making the annual assessment and levy of taxes, levy a tax of one (1) dollar on each elector in the county for the support of common schools, and a further tax of two (2) mills on the dollar upon all the taxable property in the county, to be collected at the same time and in the same manner as other taxes are collected, which shall be paid by the county treasurer to the State Treasurer, as provided by law, and which shall constitute a part of the State Tuition Fund."

Whether the 21-mill school levy now is, or is not, unique is no basis upon which we can determine its validity.

■ The Legislature is empowered to write the rules that govern the levy of taxes, the collection thereof, and the purposes for which the resulting revenues may be expended. We are not convinced that the Legislature engaged in subterfuge to avoid Section 174 of the Constitution in specifying that local property taxes (levied by the county) should support the public schools, with some State aid from non-property taxes.

The Traill County auditor refers us to some Nebraska decisions that discuss some of the complications which result from the commingling of governmental functions involving State and local purposes. Nebraska's Constitution prohibits the levying of property taxes for "state purposes" as distinguished from our Constitution which limits its property tax levies to four mills for the "expenses of the State." The Nebraska decisions are helpful in understanding the difficulty in separating State expense or purpose from local expense or purpose. See *State v. Tallon*, 196 Neb. 603, 244 N.W.2d 183 (1976); *State ex rel. Meyer v. County of Banner*, 196 Neb. 565, 244 N.W.2d 179 (1976); *Kovarik v. County of Banner*, 192 Neb. 816, 224 N.W.2d 761 (1975); *State ex rel. Western Neb. T. C. Col. Area v. Tallon*, 192 Neb. 201, 219 N.W.2d 454 (1974); and *Craig v. Board of Equalization of Douglas County*, 183 Neb. 779, 164 N.W.2d 445 (1969).

We have examined the cases cited by Dornacker from Georgia, Michigan, Nebraska, Illinois, and Arkansas which relate to limitations on tax powers of legislatures, but find none that assist us in resolving the questions before the Court.

■ We conclude that § 174 of the Constitution was adopted with the under-

standing that its provisions did not limit local levies for public schools. Neither does § 147 limit the State in expending revenues, not raised by a property tax levy, for the maintenance of the public school system. Although the Legislature may prescribe rules under which counties and school districts function, and may relieve the counties and school districts of any or all of the obligation to finance the school system, Section 174 of the Constitution does not become involved unless a property tax levy is made by the State directly.

 The district court correctly answered the questions and the matter is remanded for further proceedings accordingly. Because a public question is involved, there will be no costs on the appeal.

ERICKSTAD, C. J., and PAULSON, SAND and VOGEL, JJ., concur.